21796. KING et al., by Guardian v. KING et al., Trustees et al.

ARGUED OCTOBER 9, 1962—DECIDED DECEMBER 3, 1962—
REHEARING DENIED DECEMBER 19, 1962.

*Buchanan, Edenfield & Sizemore, Wm. H. Major, Wm. G. Grant, Carlton W. Binns, Donald G. Klein,* for plaintiffs in error.

*Robert R. Harlin, Powell, Goldstein, Frazer & Murphy, James N. Frazer, B. D. Murphy, Henry M. Quillian, Jr., Jack P. Etheridge, King & Spalding, Charles H. Kirbo, David H. Gambrell, Robert B. Troutman, Glenn Frick,* contra.

MOBLEY, Justice. ■ Which law governs in determining whether these children are "children" within the meaning of the trusts, the law of Louisiana, where their mother, Maxine, her legal husband, Leonard Fallin, and Charles Hilary King were all domiciled at the time of the children's birth, or the law of Georgia, where the trusts were executed, where, at the time they were signed and delivered, all the parties, including the trustors, trustees, and beneficiaries lived, and where the trust res has always since been kept and managed?

Defendants in error contend that Georgia law does not control the rights of plaintiffs in error to take under the trust instruments because their rights depend upon who they are, that is, whether or not they are children of King; that this involves paternity, and paternity, viz., status, depends on the law of the "domicile of origin" of these children; that only after it is determined who they are, whether or not they are children of King, does any question of interpretation of Georgia law as to the meaning of the instruments arise.

On the other hand, plaintiffs in error contend that even should the law of Louisiana, the domicile of King, Fallin and Maxine, govern in determining their legitimate or illegitimate status, the controlling question is the intention of the trustors when they made the trusts, that is, whom did they have in mind when they named as beneficiaries the "children" of Charles Hillary King? Their intention as to what law should govern must be controlling say plaintiffs in error, citing the case of *Love v. Fulton Nat. Bank of Atlanta,* 213 Ga. 887, 891 (102

SE2d 488), where this court said, "In construing a trust instrument, it is the duty of a court to find the intention of the settlor and to effectuate that intention in so far as the language used and the rules of law permit."

"The validity, form, and effect of all writings or contracts are determined by the laws of the place where executed. . ." Code § 102-108. The validity and form of the trusts are not at issue, but the effect is. The primary purpose of a trust is to provide for the beneficiaries thereof. The ultimate effect of a trust is payment to the beneficiaries; but before payment can be made, the beneficiaries must be determined. Therefore, to determine the effect of a trust, the beneficiaries must be determined. Applying Code § 102-108 as to the effect of the trust, it is clear that Georgia law will control the determination of the question whether or not the children here involved come within the terms of the trust. See National City Bank of Rome v. First Nat. Bank of Birmingham, 193 Ga. 477, 488 (19 SE2d 19); 11 Am. Jur. 382, 383, Conflict of Laws, § 95.

While a person's "status," his legitimacy or paternity, is generally, as defendants in error argue, fixed by the law of his domicile, in determining the effect of these trusts we must determine what law the trustors intended to control when they executed the trusts. See Love v. Fulton Nat. Bank of Atlanta, 213 Ga. 887, 892, supra. "It is generally agreed that the law of the place where the contract is made is prima facie that which the parties intended . . . and that such law ought, therefore, to prevail. . ." 11 Am. Jur. 405, 406, Conflict of Laws, § 119.

Where no trust, will or deed is involved, as where the question is one of intestate succession, "the status of legitimacy is created by the law of the domicile of the parent whose relationship to the child is in question" (Restatement of the Law, Conflict of Laws, § 137, p. 204); but "a trust of movables created by an instrument inter vivos is administered by the trustee according to the law of the state where the instrument creating the trust locates the administration of the trust." Restatement of the Law, Conflict of Laws, § 297, p. 379. The latter section further

points out that administration includes determining who shall receive the income, that is, who are the beneficiaries.

In Bernheimer v. First Nat. Bank, 359 Mo. 1119 (225 SW2d 745), the Supreme Court of Missouri in a well-reasoned opinion, dealing with a state of facts practically identical to these here, where a trustor, a resident of Missouri, created a testamentary trust for her son and the "lawful issue of [his] body," held that the law of Missouri governed in determining whether a child born to the son in California of an invalid ceremonial marriage should take under the trust. There, counsel, contending that the law of the place of birth should control, agreed that the law of Missouri, the locus of the trust, governed in determining what class of persons was contemplated by the phrase "lawful issue of [his] body" in the will, but contended that whether a particular person came within that class should be determined by the law of the jurisdiction where he acquired a personal status that would bring him into the general class, citing several authorities therefor. The Missouri court said in respect thereto (p. 1131): "But on examination it will be found the citations in the preceding two paragraphs generally concede that where the devolution of property, especially personalty, depends on the provisions of a *will* and not statutes of inheritance, the intention manifested by the will is controlling as to both the general class and the status of the particular person. . . And the will must be construed under the laws of the state where the testator resided, made it and died. We think the instant will and the surrounding facts disclose that it was written with the law of Missouri in mind."

The Missouri court pointed out further that for the purpose of ascertaining a testator's meaning and intention, the law of the testator's domicile governs, and the basis of this rule is the presumption that the maker of a will is more familiar with the law of his domicile than with the law of other jurisdictions and that the will is written with the law of his domicile in mind.

We are of the opinion that to apply the law of Georgia in determining whether these children come within the meaning of the trust instruments is sound, gives stability to the law, and will carry out the intention of the trustors.

■ Much of the argument of counsel has been devoted to the issue of paternity. Under the view we take of the case, it is unnecessary to resolve the many questions which revolve around this issue because even if in fact Aaron David and Lee Dan Chester are children of Charles Hilary King, which question we do not decide, we do not believe that they are such children as the trustors intented to be the objects of their bounty. We believe the controlling question to be whether or not the trustors intended the word "children" as they employ it in their trusts to include as beneficiaries thereof persons such as Aaron David and Lee Dan Chester, and it is our opinion and judgment that they did not.

The factual situation to which the rules of law must be applied to reach our judgment is as follows: At the time of the purported marriage of Charles and Maxine, Maxine was married to Leonard Fallin, from whom she has never been divorced, and was living with Fallin and their two children. King met Mrs. Fallin at a night club which he frequented and where Mrs. Fallin was employed as an "exotic dancer." On the day of their "marriage" they and other persons were drinking and drove to Mississippi where a marriage license was procured, Maxine giving a false name and address, and where a marriage ceremony was performed. About three weeks after the "marriage" Maxine informed Charles of her husband and children. Thereafter Charles King and Leonard Fallin met. At the time of the conception by either King or Fallin of Aaron David and Lee Dan Chester, King and Maxine were both fully conscious of their bigamous and adulterous conduct. Charles' "marriage" to Maxine was never annulled and declared void by a competent court and they were never prosecuted for bigamy.

It must be borne in mind that the property passing under these trusts is not the property of Charles King and never was his. He only received the income from it during his life. It was the property of Charles' father and mother, and theirs to dispose of as they saw fit, without regard to how Charles might have seen fit to dispose of it had it been his. Therefore the question here involved is not devolution of Charles' property, but distribution by his parents of their property by these inter

vivos trusts. In determining whether or not Aaron David and Lee Dan Chester take as beneficiaries of the trusts the question is not their right to inherit but solely one of determining whether or not the trustors intended to include as beneficiaries children such as they are. *Comer v. Comer*, 195 Ga. 79, 85 (23 SE2d 420, 144 ALR 664).

"The construction of a contract is a question of law for the court." *Code* § 20-701. "The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." *Code* § 20-702.

Plaintiffs in error, the claimants, reason as follows: The word "children" in a trust means legitimate children. *Code* § 53-104 which is plain and unambiguous and therefore not subject to construction makes us the legitimate children of Charles King, if in fact we are his children. Therefore, let us prove under *Code* § 74-101 that we are in fact children of Charles King since, if we establish the fact of his paternity, we will take as beneficiaries under the trusts by virtue of being included within the meaning of the word "children" as used therein.

The fallacy in this argument is that there are other statutes of equal force under which these children are considered illegitimate, and if the trustors are charged at the time they executed the trusts (1934) with knowledge of *Code* § 53-104, they would likewise be charged with knowledge of laws conflicting therewith. *Dorsey v. Clements*, 202 Ga. 820, 823-24 (44 SE2d 783, 173 ALR 509).

Prior to 1934 it had been determined by this court that a reference in a will to "children" did not include illegitimate children unless it was manifest from the context that the word was employed in a broader sense. *Hicks v. Smith*, 94 Ga. 809 (3) (22 SE 153). Which children were illegitimate? *Code* § 74-201 provided that: "An illegitimate child, or bastard, is a child born out of wedlock, and whose parents do not subsequently intermarry, or a child the issue of adulterous intercourse of the wife during wedlock, or a child who is not legitimate within

the meaning of section 74-101." *Code* § 74-101 provided that: "All children born in wedlock, or within the usual period of gestation thereafter, are legitimate. The legitimacy of a child thus born may be disputed. Where possibility of access exists, except in cases of divorce from bed and board, the strong presumption is in favor of legitimacy, and the proof should be clear to establish the contrary. If pregnancy existed at the time of the marriage, and a divorce is sought and obtained on that ground, the child, though born in wedlock, is not legitimate. The marriage of the mother and reputed father of an illegitimate child, and the recognition of such child as his, shall render the child legitimate; and in such case the child shall immediately take the surname of his father." *Code* § 53-104 provided that: "Marriages of persons unable to contract, or unwilling to contract, or fraudulently induced to contract, shall be void. The issue of such marriages, before they are annulled and declared void by a competent court, shall be legitimate . . ." *Code* § 26-5603 contained a provision similar to the one in *Code* § 53-104.

Thus in 1934, *Code* § 74-201 stated that children who were "the issue of adulterous intercourse of the wife during wedlock" were *illegitimate*, and *Code* § 53-104 stated that "the issue of . . . marriages [of persons unable to contract] before . . . [the marriages] are annulled and declared void by a competent court, shall be *legitimate*." (Emphasis ours.) *Code* § 53-102 stated that a person who was a party to a "previous marriage undissolved" was a person unable to contract marriage.

The decisions of this court as of 1934 would have shed light upon the question of whether or not persons such as the claimants would take under these trusts. In the case of *Hicks v. Smith*, 94 Ga. 809 (3), supra, the court had held that a child born outside of lawful wedlock who was legitimated by his father pursuant to *Code* § 74-103 became thereby only so far legitimate as to inherit from his father, being still as to his great-grandfather a bastard, and therefore not taking under his great-grandfather's will which used the word "children" without any qualification. In *Perkins v. Levy*, 158 Ga. 896 (124 SE 799), the court had held that a marriage of a person unable to contract

marriage by virtue of being a party to a previous marriage undissolved was void, but that under *Code* § 53-104 the issue of the "marriage" were legitimate and would inherit shares of their intestate father's estate.

Because in 1934 the trustors used in their trusts the word "children" to describe intended beneficiaries, must we in 1962 charge them with knowledge that should children be born under the circumstances in which the children in this present case were born, and should those children be permitted to prove under *Code* § 74-101 the paternity of the trustors' son, that without question those children would by virtue of the "cleansing effect" of *Code* § 53-104 be so far legitimate that they would take in equal shares with children unquestionably born to their son during lawful wedlock? The answer is "no."

*First,* though statutes conferring legitimacy upon children who would have been bastards at the common law because not born after lawful wedlock are remedial in nature, being intended to prevent the sins of the parents from being visited upon their innocent offspring, leaving the punishment of the parents to the criminal law, the courts of this State have viewed such statutes with circumspection, giving them strict construction, because they disrupt the traditional, settled rules of property. See *Beall v. Beall,* 8 Ga. 210, 212 (18); *Hicks v. Smith,* 94 Ga. 809, 817-18, supra. Thus, this court had prior to 1934 in the *Hicks* case, supra, refused to allow a child legitimated by his father pursuant to *Code* § 74-103 to take under the will of his great-grandfather. Might not the trustors have supposed that the same strict construction would be given to *Code* § 53-104? At the time the trusts were executed no decision of this court had ever applied § 53-104 in a case wherein the question was the intention of the maker of an instrument when he used the word "children" to designate recipients of his bounty. The question of the applicability of that section in such a case is one of first instance in the present case.

*Second,* if the claimants are in fact the children of Charles King, are they not within the meaning of *Code* § 74-201 "issue of adulterous intercourse of the wife during wedlock," they having been conceived and born to their mother, Maxine, during

her lawful marriage to Leonard Fallin, and therefore are they not *illegitimate* children of King? Or are they, if children of King, as they insist they are, children of his void marriage to Maxine and therefore under *Code* § 53-104 his *legitimate* children? Should they be referred to as children of Maxine's adulterous intercourse with King during her lawful wedlock with Fallin, and hence King's *illegitimate* children under § 74-201, or as children of Maxine's void marriage to King, and therefore King's *legitimate* children under § 53-104?

Whatever may have been the legislative intent as to the interrelationship of these two statutes, the General Assembly has not expressed that intent, for each statute is absolute and unqualified in its terms and neither makes reference to the other.

If Aaron David and Lee Dan Chester are the children of Charles Hilary King, it is not possible to determine from § 53-104 and § 74-201 whether the General Assembly intended them to be his legitimate or his illegitimate children. Therefore, when in 1934 the trustors executed these trusts, they must be charged with knowledge that the word "children" as used in their trusts would not *per se* include illegitimate children (*Hicks v. Smith*, 94 Ga. 809 (3), supra), but that *Code* § 53-104 and *Code* § 74-201, which sections had not been construed by this court with relation to each other, were unclear as to whether children born under such circumstances as the children in the present case would be considered as legitimate or illegitimate. Under these circumstances they might reasonably be expected to make their intentions as to inclusion or exclusion known by the words they employed and the dispositive scheme which their instruments evidence. This they did.

The plain language of the trusts evidences the intent of the trustors to include as beneficiaries only children born to their son Charles in lawful wedlock, for they said that the income from the trusts should go to Charles for life and upon his death to his "child" or "children," and if no surviving child or children to his "widow." Clearly the words used and the dispositive scheme manifested by the instruments, that is, the disposition to their son's children and if no surviving children to his widow, show that the trustors intended as beneficiaries children born

of a lawful wife, a mother who if married to Charles at his death would be his widow. Maxine, the mother of these children, was not his widow and could never have been, for her purported marriage to him was void. Since Maxine would never qualify to take as Charles' widow, she never having been his lawful wife, these children, if children of her relationship with Charles, were not of lawful marriage and therefore would not take under the trusts.

In the cases of *Perkins v. Levy,* 158 Ga. 896, supra, and *Griffin v. Booth,* 176 Ga. 1 (167 SE 294), it was the *husband* who was the party to the previous undissolved marriage while here it is the *wife,* and *Code* § 74-201 refers only to adulterous intercourse of the *wife* during wedlock. The rulings in those cases therefore are not in conflict with the mandate of § 74-201 of the Code. The case of *Eubanks v. Banks,* 34 Ga. 407, was decided under the common law of North Carolina, the marriage not being bigamous because of the defense of over 7 years absence and being merely *voidable* rather than *void.*

■ Plaintiffs in error complain that the trial court in its judgment made the finding that they "are the legitimate children of Leonard Edward Fallin," and that this finding would be res judicata as to their being children of Fallin and would prevent them from inheriting from King or taking under any will he left.

This court agrees with the judgment of the superior court finding that Aaron David and Lee Dan Chester are not the children or descendants of Charles Hilary King within the meaning of the trusts, for, even if they be the children of King, which question we have not decided, they are not such children as the trustors intended to take as beneficiaries. Thus, the finding of the trial court that they are the legitimate children of Leonard Fallin was not necessary to a determination of the question of whether they are children within the meaning of the trust instruments. Upon the return of this case to the trial court, the trial court is directed to strike from its judgment the finding that Aaron David Fallin and Lee Dan Chester Fallin, sometimes referred to as Aaron King and Lee Dan Chester King, "*are the legitimate children of Leonard Edward Fallin.*"

Plaintiffs in error having obtained a substantial modification of the judgment against them, the costs of bringing the case to this court are taxed against the defendants in error. *Code Ann.* § 6-1703; *Hartley v. Hartley,* 212 Ga. 62 (90 SE2d 555); *Dependable Insurance Co. v. Gibbs,* 218 Ga. 305, 316 (127 SE2d 454).

*Judgment affirmed with direction. The costs of bringing the case to this court are taxed against the defendants in error. All the Justices concur, except Duckworth, C. J., who dissents, and Quillian, J., who concurs specially.*

DUCKWORTH, Chief Justice. dissenting. Since the majority rules that whether the persons here involved are children as that term is used in the trust instrument, should be determined by the law of Georgia and not the law of Louisiana, and since for the purpose of the decision it is conceded that they were the issue of a bigamous marriage, I shall so treat the case for the purpose of this dissent without intimating an agreement with those positions. No benefit could result to either side by a discussion of those matters in this dissent. Therefore, I dissent from the opinion and to the judgment based thereon and now proceed to state the reasons for my dissent.

The relevant portion of *Code* § 53-104 is as follows: "Marriages of persons unable to contract . . . shall be void. The issue of such marriages, before they are annulled and declared void by a competent court, shall be legitimate." Among the grounds that render a person unable to contract marriage is "previous marriage undissolved." *Code Ann.* § 53-102 (1) (Ga. L. 1957, p. 83). It is also declared in the same paragraph of the above Code section, as amended, that "Nothing herein shall be construed to affect the legitimacy of children." In *Mims v. State,* 43 Ga. App. 100 (157 SE 901), it was said that, "The fact that the marriage was void for the reason that the defendant was unable to enter into such a contract, because of his tender years (sixteen), did not render the child illegitimate, the marriage not having been annulled and declared void by a competent court." *Code* § 74-101 declares that: "All children born in wedlock, or within the period of gestation thereafter, are legitimate." The early case of *Eubanks v. Banks,* 34 Ga. 407, supra,

involved a claim of a child, the issue of a bigamous marriage, to the right to inherit from a child which was the issue of a valid marriage of one of its parents, and this court upheld its claim. The bigamous marriage there involved occurred in North Carolina. This court said in headnote 3 thereof: "That, upon common law principles, which are presumed to prevail in North Carolina as in Georgia, the second marriage was not absolutely void, nor the issue of the same illegitimate; but that the issue were legitimate, and capable, under the laws of Georgia, of inheriting from their half brother, a son of their father by a former marriage." This is a pat ruling, binding upon this court to the effect that such children are fully invested with complete rights of inheritance. Another paragraph of that opinion at page 416 vividly expresses the thought that the object of this law is to shield and protect the helpless innocent child against any stigma or lack of a right to inherit, and I believe it may, with profit, be repeated here. It is: "Surely, when in Georgia the issue of such second marriage of Elizabeth Eubanks, had they been born on the soil of Georgia, though the marriage was in North Carolina, would not be held by our Courts as illegitimate, but would be protected from such a stigma, as also from deprivation of rights of inheritance. . ."

In *Campbell v. Allen*, 208 Ga. 274 (66 SE2d 226), it was held that a child which was the issue of a bigamous common-law marriage before it was decreed to be void by a court was legitimate and was a lawful heir of its father. My dissent in that case was upon the ground that I believed common law marriages were not embraced in *Code* § 53-104. In *Connor v. Rainwater*, 200 Ga. 866 (38 SE2d 805), we cited *Eubanks v. Banks*, 34 Ga. 407, supra, and *Perkins v. Levy*, 158 Ga. 896, supra, to support our ruling that the child of a bigamous marriage before it was decreed void and before a prosecution for bigamy was legitimate. In *Irving v. Irving*, 152 Ga. 174 (108 SE 540, 18 ALR 88), with only five Justices participating, and overlooking *Eubanks v. Banks*, it was held that the issue of a bigamous marriage was not legitimate, but in *Perkins v. Levy*, that case was distinguished and it was held by a full bench that such children born before the voidable marriage was decreed by a

court to be void were legitimate.  To the same effect see *Griffin v. Booth,* 176 Ga. 1 (4), supra.

I am unable to understand how the majority can read the law above cited and then hold in this case that the issue of the bigamous marriage, which was not declared void by any court, must bear the stigma of illegitimacy, and suffer a loss of the benefits conferred by their grandfather by the trust instrument upon the children of their father.  By this one stroke is swept away the sole humane purpose of the law in making them legitimate.  In order to accomplish this cruel and inhumane result the majority purport to construe the unambiguous words "children" and "legitimate" as they appear in the instrument and the law respectively, and in doing so violate the positive rulings of this court in *Neal v. Moultrie,* 12 Ga. 104; *Aldridge v. Federal Land Bank of Columbia,* 203 Ga. 285 (46 SE2d 578); *Bibb County v. Hancock,* 211 Ga. 429 (86 SE2d 511); *Burnam v. Wilkerson,* 217 Ga. 657 (124 SE2d 389).

I do not believe the reasons given by the majority for that ruling will stand up when put to the acid test of full analysis.  First they cite *Hicks v. Smith,* 94 Ga. 809, supra.  That case involved a bastard; the present case does not, but on the contrary involves legitimate children.  This alone shows the inapplicability of that case here.  There the illegitimate child had been legitimatized by court order under a provision of law authorizing such procedure.  And it was held that the absence of legitimacy from birth deprived the child of the natural right to inherit, but its right to inherit from its father alone arose solely in virtue of the court order on his petition to legitimatize it.  There, this court at page 814 said: "The purpose of this act [the act under which the court procedure was taken], as expressed in its title, was to 'prescribe the manner in which persons born illegitimate should be made legitimate.'  In the legislative mind was this purpose.  It had the power to confer upon such a child in the act of legitimation all of the attributes, including inheritable blood, of a perfect son born in lawful wedlock; it had the power to purge his blood of all impurity, and, despite the strictest rule which ever prevailed under the ancient feudal system, make him eligible to the succession.  The whole

subject, as to how far and to what extent it would confer inheritable blood was within the scope of legislative power. One word without qualification was sufficient to give him this status, and that one word, without more, *'legitimate'*." (Italics mine). That opinion goes on to say that had the act empowered the court to declare him legitimate, this would have conferred upon him the right to inherit from his father, and "through his reputed father to take by descent from ancestors on the paternal line." But since the act went further to say "and capable of inheriting from his father" this placed a limitation upon the unrestricted right of inheritance which the word "legitimate" standing alone would confer. Thus is demonstrated that this case not only utterly fails to support but definitely and plainly contradicts the majority ruling.

The other reason given by the majority is likewise demonstrably fallacious. They say that the provision in the trust instrument for the widow of the son to take if he has no living children, in some mysterious way, indicates that the grandfather meant by the word "children" only children born in lawful wedlock. In the first place the two words "children" and "widow" are utterly unrelated in meaning and hence each stands on its own meaning independently of the other. Each describes different persons who might take. Certainly it will not be contended that the children referred to must be the children of the widow referred to? In fact the son had two children by his divorced wife and they certainly are unrelated to any widow he might have, but they are without dispute included in the word "children." Had he lawfully married after the birth of the children here involved and that wife survived him, she would have been the widow referred to, but she would have been wholly unrelated by blood to any of his children. Besides we are witnessing the acceptance at its full meaning of the word "widow," and a refusal at the same time to accept at its full meaning the word "children," neither of which is ambiguous. Then the word children is made to exclude a part of its meaning by the use of the word widow. When these completely invalid grounds upon which the majority place their ruling are thus exposed as being rank fallacy, their ruling stands without sup-

port and in open contradiction to the law and facts that should control. When *Code* § 53-104 made these children legitimate, it thereby invested them with all the rights of children, including the unqualified right to inheritance through their father from his father. I am saddened to witness the failure to follow plain law and facts with the result that innocent people must bear the stigma which the law sought to relieve them from, and lose rights which the law and facts show them entitled to.

In *Aldridge v. Federal Land Bank of Columbia,* 203 Ga. 285, supra, the law (*Code* § 92-5712) providing for release of property under lien from tax liens did not limit the word "property," but it was contended that it should be construed to include only real property because in providing that the lien holder should be allowed to pay the taxes assessed against any one or more pieces of such property, the law included only real property. In rejecting the contention it was said: "We are bound, therefore, to construe the statute here involved as referring to both real and personal property wherever the word 'property' appears, unless a different meaning is apparent from the context. Examining closely the entire language of the statute, we find nothing to authorize any limitation of the meaning of property as there used to only real property. There is nothing confusing, uncertain, or ambiguous in the language. . . The argument that 'other pieces of property' must necessarily refer to real estate alone cannot be upheld without writing into the statute something that was not put there by the legislature and which is not 'apparent from the context.'" Consistent with that ruling, I contend that in the present case the word "children" not having been by the trust instrument limited to some class of children, should not be so limited by this court, but it must be taken to include all of "his children."

In *Hungerford v. Trust Co. of Ga.,* 190 Ga. 387 (9 SE2d 630), we had a will to construe, and although the will conditioned the bequest upon the fact that the named beneficiaries "are living with their present wives at the time of my death," it was contended that the purpose and intent in fixing this condition was to guard against her son-in-law's receiving it in case he separated from or divorced her daughter. There is a

strong likelihood that the purpose contended for was in the mind of the testatrix, and it would have been justified on the basis of right and humanity. But this court rejected the contention upon the ground that the intent was plainly expressed in the will and that this court was bound thereby, and constructions to the contrary must be rejected. In that opinion we fully recognized the rule requiring discovery and effectuation of the intent, but with equal finality we held that this intent must be first looked for in the will and when found to be clearly expressed therein it was not permissible to receive aliunde evidence as to intent, or to change the provision of the will under the pretense of construction. Ample controlling authority was therein cited to support our ruling. We said the insistence for a construction not authorized was an attempt to get the court to rewrite the will. And it was there said: "If such had been the intention, it could have been so stated in lieu of the language employed, which is not susceptible of any such construction. Again we say it is no proper function of courts to write wills, or to change the plain language of the will by construction." It is noted that the rulings in that case upheld the contentions therefor made by the same law firm that represents the defendants in error here, and they now seek a contrary ruling which they can do with propriety, but this court should not violate its ruling there.

The legitimate children here involved can not be excluded from the trust instrument by any unwarranted consideration of *Code* §§ 74-101, 74-103, 74-201, and 26-5603, when *Code* § 53-104 definitely and conclusively makes them the legitimate children who are included in the words "his children" found in the instrument.

There is no conflict in *Code* §§ 53-104 and 74-201. The former makes children who are the issue of a bigamous marriage before it is declared void by a court legitimate, although the mother is guilty of adultery. The latter merely provides that in the absence of such bigamous marriage if the mother conceives a child by committing adultery with a man to whom she is not married, the child is a bastard. The specific and significant distinction is marriage though bigamous for it under 53-104 renders a child

legitimate, while its absence under 74-201 renders the child a bastard. But if this plain distinction leaves doubters, a further controlling law compels its acceptance. Full bench decisions of this court are binding upon every Justice. A bastard cannot inherit from its father or through him. In *Eubanks v. Banks,* 34 Ga. 407, *Perkins v. Levy,* 158 Ga. 896, and *Griffin v. Booth,* 176 Ga. 1, with all the Justices concurring it was held that the child of a bigamous marriage before it was dissolved was legitimate and capable of inheriting from its father. In those cases the two Code sections must have been considered, and they constitute binding authority to the effect that 74-201 in no degree alters 53-104.

The extended discussion of 74-201 by the majority demonstrates a lack of recognition of the rule. *Code* § 53-104 is unambiguous and unequivocally makes these children the legitimate children of Charles Hilary King, and makes them his children in blood. *Hicks v. Smith,* 94 Ga. 809, supra; *Eubanks v. Banks,* 34 Ga. 407, supra; and *Perkins v. Levy,* 158 Ga. 896, supra. To exclude these children according to law, this court would have to do the impossible of finding that the word "children" as used in the instrument contained within it definite exclusions. What the maker said speaks louder than any secret thought he might have had, and the only way this court can be definitely sure it is giving effect to his intention, is to effectuate what he plainly said. Any other course is purely speculative, without support in fact, and contrary to law.

All the argument of counsel about the sinful conduct of the parents, and implying thereby that this should be visited upon the innocent children, manifests a woeful misconception of the purpose of *Code* § 53-104, for its sole purpose is to protect such children against stigma or loss of rights because of the sins of their parents.

I have presented the foregoing arguments to my Associates as forcefully as I could but to no avail. I feel that my Associates, though acting in perfectly good faith, have nevertheless unconsciously substituted their individual notions of what ought to be for what the law and facts actually are. The basic error of the majority stems from a total misconception of the court's

duty in dealing with the word "children" as used in the instrument. By law this court is bound to allow anyone whom the word includes to come within that word. Finally I would urge a reading of *Beall v. Beall*, 8 Ga. 210, supra, for an impressive presentation of the proper course for this court in this case, and as a reminder of the virtue of proper judicial self-restraint by confining itself to its constitutionally assigned function of construing and applying the law, and avoidance of usurpation of legislative functions by enacting or amending laws under the guise of construction, when construction is neither necessary nor permissible.

QUILLIAN, Justice, concurring specially. I concur in the judgment but not in all that is written in the majority opinion or in the direction that the trial judge strike from his judgment the phrase that Aaron David Fallin and Lee Dan Chester Fallin "are the legitimate children of Leonard Edward Fallin."