22217. BRAZZIEL v. SPIVEY.

ARGUED OCTOBER 14, 1963—DECIDED NOVEMBER 12, 1963.

*Rudolph N. Patterson, Carl E. Westmoreland,* for plaintiff in error.

*Milton K. Wallace, Fred M. Hasty, Assistant Solicitor General,* contra.

MOBLEY, Justice. In a habeas corpus proceeding brought by the mother against the father for custody of their three minor children, the Juvenile Court of Bibb County, after hearing evidence, awarded custody to the father and allowed the mother visitation rights. The exception is to that judgment.

The evidence as to the best interests of the children was sufficient to support the award of the children's custody to their father, if the children are legitimate. *Code Ann.* § 74-107; *Dyche v. Dyche,* 218 Ga. 833 (131 SE2d 104). The mother contends, however, that the children are illegitimate under the

construction given *Code* §§ 53-104 and 74-201 by this court in the case of *King v. King*, 218 Ga. 534 (129 SE2d 147), and, therefore, she is entitled to their custody and control by reason of *Code* § 74-203 and the cases of *Adams v. McKay*, 36 Ga. 440 (1); *Perry v. State*, 113 Ga. 936 (1) (39 SE 315); and *Blakemore v. Blakemore*, 217 Ga. 174 (121 SE2d 642), because there is no evidence that the father has taken any action to legitimate the children and no evidence that she has surrendered her right to their custody or is unfit to be entrusted with their custody.

The agreed statement of facts in the present case shows that the mother went through a marriage ceremony with the father after hearing that her lawful husband had remarried, from which she assumed he had gotten a divorce; that she found out he had not gotten a divorce when her attorney started divorce proceedings against the father of the children here in question; that the father was unaware of the mother's previous marriage until he found out that was the reason the divorce proceeding brought by her against him was dismissed.

The children in question in *King v. King*, 218 Ga. 534, supra, relied upon by the mother in this case to sustain her position that her children are illegitimate, were born to a mother who, while married to one man and living with him and their children, went through a marriage ceremony with the son of the trustors, though she well knew of the continued existence of her lawful husband and of their lawful marriage, this woman telling the son of the trustors of the existence of her lawful husband and her lawful marriage to him within a few weeks after their participation in the sham ceremony, she thereafter living with both men, and the children thereafter being conceived and born to her.

*Code* § 53-104 provides that children who are "The issue of . . . [marriages of persons unable to contract marriage], before they are annulled and declared void by a competent court, shall be legitimate." *Code* § 74-201 provides that "a child the issue of adulterous intercourse of the wife during wedlock" is illegitimate.

This court did not hold in the *King* case that *Code* § 74-201 controlled over *Code* § 53-104 to render the children there in question illegitimate. Rather, we held that even if the children

there involved were the children of the trustors' son, they were not such children as the trustors intended to be the objects of their bounty. The Chief Justice dissented on the ground that under *Code* § 53-104 the children were legitimate and would take as "children" under the trusts.

The question before the court in the *King* case was the construction of two identical trusts and the specific question raised and decided was whether the children there in question would take as beneficiaries under clauses giving the income from the corpus to any "child" or "children" of the son of the trustors and, upon the termination of the trusts, giving the corpus to any "child" or "children" of the son of the trustors or, if none, providing for the widow of the trustors' son during her life.

We reached our judgment in the *King* case that the trusts did not include as beneficiaries children such as the children-claimants by reasoning that the question of whether or not they would take as beneficiaries depended upon the intention of the trustors; that the intention of the trustors would be determined from the words they had used and the dispositive scheme their instruments manifested; that the words they used to express their intention would be construed in light of the law of Georgia as it existed when the instruments were drawn; that in looking to this law the trustors would have found that no case had held that a child who was rendered legitimate at birth by operation of *Code* § 53-104 would take under a contract, deed or will giving property to "children," but that this court had held that a bastard who had been partially rendered legitimate by reason of court proceedings pursuant to *Code* § 74-103 would not take under the will of his great grandfather which left property to certain "children"; that this court had applied *Code* § 53-104 to render legitimate for purposes of the laws of inheritance a child of a marriage between a man who was a party to a prior, undissolved marriage and a woman who was able to contract marriage, but that no case had ever construed *Code* §§ 53-104 and 74-201 with reference to each other to determine whether the legislature intended children conceived under the circumstances which were there involved to be legitimate or to be illegitimate; that since the law existing at the time the instruments

were drawn was in this unresolved state, the trustors could not be charged with knowledge that the word "children" as used in their instruments would include children such as the children-claimants unless the trustors used qualifying adjectives fore or aft of that word to exclude them; rather, that all the trustors were bound to do in framing their instruments was to make known their intention as to the objects of their bounty and this they had done by the words they employed and the dispositive scheme their instruments manifested.

The present case is fully distinguishable from the *King* case in that in the *King* case the intention of the trustors controlled while in the present case the intention of the legislature controls. We are now called upon to construe *Code* §§ 53-104 and 74-201 with reference to each other to determine whether the legislature intended children born under the circumstances present in this case to be legitimate or to be illegitimate. We must conclude that the legislature intended to remove the stigma of bastardy from innocent children if their parents go through a marriage ceremony, even though that marriage be void because one of the parties was unable to contract marriage by reason of an existing marriage as *Code* § 53-104 plainly provides that "the issue of . . . [marriages of persons unable to contract marriage], before they are annulled and declared void by a competent court, shall be legitimate." Whether the General Assembly in adopting that Code section contemplated the situation which existed in the *King* case, where both the woman and the man knew at the time the children were conceived (if they were his children) that they were not legally married and that their marriage was void, we do not know. Whether a distinction should be made between that type of case and cases where parties innocently and in good faith go through a marriage ceremony and children are conceived, the parties later discovering that the marriage was void, as was apparently the case here, is a matter which addresses itself to the General Assembly. Under existing law there is no difference as to the parents between adulterous conduct by a married woman with a man not her husband under the cloak of a known to be meaningless nuptial ceremony and such adulterous conduct plain and simple, but we must conclude that

the General Assembly created a difference as to the children of these types of relationships and conferred legitimacy upon children of the former relationship while still branding as bastards children of the latter relationship. Under this construction of *Code* §§ 53-104 and 74-201 the trial court was required to consider the three children legitimate.

*Judgment affirmed. All the Justices concur.*