## 42152. IN RE WHITE.
### (333 SE2d 588)

CLARKE, Justice.

This appeal is from an order setting aside a legitimation judgment. The trial court found the legitimation order to be null and void because it was based on a mistake and was against public policy. We affirm the trial court and in doing so agree with the finding of mistake but disagree with the finding of violation of public policy.

The petition for legitimation was filed by Jesse Julian White alleging the child to be illegitimate and that the petitioner was the father of the child. In response to this, the mother executed an affidavit of consent in which she identified White as the father of the child. After the order of legitimation was entered, White proceeded with an attempt to procure a new birth certificate and in doing so discovered on the existing birth certificate that the mother was married at the time the child was conceived. The action to set aside the judgment of legitimation recites that the mother's consent was mistakenly given because the child had a legal father but that no fraud was intended. The petition also alleged that a mother's denial of a child's legitimacy is a violation of public policy. This pleading was filed by White in an attempt to deal honestly with the court. However, the record indicates that White continues to desire an order designating the child as his legitimate offspring.

1. The public policy issue stems from ancient cases of this court and has been carried forward by statute. We have long held that when a child is born or conceived in wedlock there is a presumption of legitimacy. *Wright v. Hicks*, 12 Ga. 155 (1852). The legislature has

enacted a similar rule but has provided that the strong presumption of legitimacy may be disputed. To overcome the presumption, the proof must be "clear." OCGA § 19-7-20 (b). White and the guardian ad litem for the child both cite *Colson v. Huber*, 74 Ga. App. 339 (39 SE2d 539) (1946), for the proposition that public policy will not allow a mother to testify as to the illegitimacy of her child. They then point to the fact that the whereabouts of the "legal father" is unknown. This creates a dilemma in that it may be impossible to establish the fatherhood of the biological father.

In this case the "legal father" has never known the child, has never supported the child, and has not been heard from for several years. White and the mother both say White is the biological father, and White says he is anxious to support the child and for the child to bear his name. Public policy cannot be so narrow as to stand as an obstacle for such a worthwhile effort. We hold that the mother may testify as to the identity of the biological father of her child and that *Colson v. Huber*, supra, is overruled to the extent that it holds otherwise.

2. On the issue of mistake, we find that the legitimation order must be set aside. White, as petitioner, was unaware of the existence of the marriage at the time of conception. As a result, this fact was not pled and no effort was made to serve the "legal father." There can be no doubt that a man married to a woman at the time of the conception or birth of a child is a party at interest when another man claims fatherhood of the child in a legitimation proceeding. Therefore, due process requires that legal service be had. We hold that under such circumstances the "legal father" must be served but that service may be perfected in the same manner as provided for in adoption proceedings. See OCGA § 19-8-6 (c). Since that did not occur in this case, the order setting aside the legitimation judgment must be affirmed. This does not, however, prevent White from reinstituting a legitimation proceeding consistent with this holding.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 5, 1985.

*Black & Black, Adrienne Black,* for appellant.
*Lois W. Gossette,* for appellee.