### 70693. NOGGLE v. ARNOLD.
(338 SE2d 763)

BENHAM, Judge.

This appeal must be dismissed due to appellant's failure to follow the appellate procedure for discretionary review required by OCGA § 5-6-35 (a) (2). *Brown v. Williams,* 174 Ga. App. 604 (332 SE2d 48) (1985).

*Appeal dismissed. Banke, C. J., Deen, P. J., McMurray, P. J., Birdsong, P. J., Carley, Sognier, and Pope, JJ., concur. Beasley, J., dissents.*

BEASLEY, Judge, dissenting.

I respectfully dissent from the dismissal of the appeal for failure to follow the discretionary route in this case. OCGA § 5-6-35 was amended in 1984 and, among other things, subsection (a) (1), (2) was substantially enlarged to embrace additional subject matter. It was not clear what was intended, which has led to some confusion. In *Brown v. Williams,* 174 Ga. App. 604 (332 SE2d 48) (1985), we held that an appeal from a legitimation proceeding requires application, because it is "a type of domestic relations case." Yet several months before, we had remanded a direct appeal from denial of a petition for

legitimation of a minor child, because the trial court had not made written findings of fact and conclusions of law as required by OCGA § 9-11-52. *Cooper v. Griffin* (unpublished opinion). That opinion concluded: "The losing party shall thereafter be free to file another notice of appeal if he or she should wish to do so." Thus, in that case at least, we had taken the view that direct appeal was appropriate, and we acted on it. And what is more, we have invited another direct appeal in that case.

When *Brown* was decided on April 17, 1985, the appellant in the instant case had already, on March 25, dutifully filed his notice of appeal from the March 8 order. Obviously, he could not know about the April 17 decision. Although he would probably not have known of the unpublished *Cooper v. Griffin* decision, his view of the correct procedure for appeal was held in common by others, even on this Court, and was not an unreasonable construction of the newly amended statute.

There was nothing at all to put appellant on notice that the proper procedure, about which this Court held conflicting views, would be resolved in favor of the discretionary route. It does not seem fair to deny a review in these circumstances. As will be seen from a discussion of the merits, we are only compounding the lack of due process accorded appellant's petition. Of course, now that *Brown* has been published, notice has been given and there will be no excuse for erroneously filing a direct appeal. I would give it prospective application only, since the appeal track chosen by appellant was arguably the correct one. This court has discretion to adopt such a policy and thereby allow the unsuspecting appellant to arrive at his first destination, i.e., a full review of his appeal. Fitting is the rationale expressed in *Federated Mut. Ins. Co. v. DeKalb County*, 176 Ga. App. 70, 72-77 (335 SE2d 873) (1985).

Turning to the merits, the trial court denied the status of legitimacy of a now one-year-old child who bears his father's full name as "junior." The law favors legitimacy, not only as a principle of an ordered and moral society, but also as a concrete basis upon which rest certain rights. It has been said that the law favors legitimation of children, where it can be done with safety to society. *Harrison v. Odum*, 148 Ga. 489, 495 (96 SE 1038) (1918).[1] The preference is so strong that it is allowed to occur by various means besides birth during wedlock: birth after wedlock ends but where conception occurs during marriage (OCGA § 19-7-20 (a)); birth before wedlock where parents marry thereafter and father recognizes child as his (OCGA § 19-7-20;

---

[1] That case refers to Code 1910 § 3012, which is substantially identical with the present law, OCGA § 19-7-20.

*Glover v. Clark*, 161 Ga. App. 552, 554 (1) (b) (288 SE2d 887) (1982))
(legitimacy is dated from birth); birth during bigamous marriage
where cohabitation and recognition of parentage occurs after first wife
dies; birth of bigamous marriage entered innocently and in good faith
(recognized as legitimate so that innocent children are not deemed
bastards), *Brazziel v. Spivey*, 219 Ga. 445 (133 SE2d 885) (1963);
birth of common law marriage; birth by way of artificial insemination
(OCGA § 19-7-21); legitimation procedure (OCGA § 19-7-22). Absent
one of the other circumstances, the statutory procedure initiated by
appellant is the exclusive one for a father to render his child fully
legitimate. *Savage v. Blanks*, 117 Ga. App. 316 (160 SE2d 461) (1968).
Of course, he has no absolute right to legitimate the child. *Mabry v.
Tadlock*, 157 Ga. App. 257 (277 SE2d 688) (1981). This is true be-
cause the primary purpose is to protect the child, so that the central
issue is what is in the best interests of the child with respect to legiti-
macy versus illegitimacy.

While the appellate hand which challenges a determination based
on discretion should be heavy so as not to disturb the judgment of
those who are at the battlefield and can see and hear and perceive, we
are to be vigilant in assuring the proper exercise of that power of dis-
cretion within the bounds of the law.

Here the trial court strayed from those confines. First, it appears
there was no hearing on the father's petition. The record before us
consists of three documents: the simple petition, the short conclusory
answer filed by a person who this court unanimously says had no
right to intervene and who may not at the time have even been the
administrator he claimed to be, and the court order denying legitima-
tion. The record does not show that a hearing was held on the issues
raised by the legitimation petition under OCGA § 19-7-22. The brief
of the father complains that the court denied the petition based on a
hearing in a separate custody case brought by the child's aunt and
uncle and that the court did so after reserving judgment, at their re-
quest, in the custody case. The appellee, who has no standing in the
legitimation case, confirms the father's recitation of what happened
below. Obviously, the denial of legitimation strengthens the claim of
the aunt and uncle for custody while weakening that of the child's
father, because legitimation entitles the father prima facie to custody.
OCGA § 19-7-25; *Sims v. Pope*, 228 Ga. 289, 291 (185 SE2d 80)
(1971).

It seems elementary that due process requires a hearing on appel-
lant's petition, with an opportunity to show that the child should be
recognized in the eyes of the law as a legitimate child. Legitimation
proceedings may not be dealt with summarily but require due pro-
cess. See, e.g., *In re White*, 254 Ga. 678, 679 (2) (333 SE2d 588)
(1985). The considerations to be taken into account in legitimation

are not identical with those in a custody suit. The latter, while recognizing legitimacy, focuses on fitness of the parent for custody. Here the court apparently considered them together.

In the order which was entered a month after the petition was filed, the court concluded that it was in the best interest of the child to deny the petition for legitimation. The reasons assigned were that the father was awaiting trial for the mother's death, that it could see "absolutely no benefit" to the child from legitimation, and that the child would be adequately supported by an expected inheritance from the mother plus court-surmised Social Security benefits.

These are not valid bases to withhold legitimation. Legitimation results in a number of benefits to a child. It is true that the distinction in the legal rights flowing from legitimacy versus illegitimacy is diminishing. For example, children of both classifications can sue for a father's or a mother's wrongful death. *Edenfield v. Jackson*, 251 Ga. 491 (306 SE2d 911) (1983), cited in *Tolbert v. Murrell*, 253 Ga. 566, 571 (322 SE2d 487) (1984); see also *Weldon v. Williams*, 170 Ga. App. 589, 591 (317 SE2d 570) (1984). And the right to support from the father is the same for both categories. *Mabry v. Tadlock,* supra. Adequate support without the father's help was thus an irrelevant basis for the trial court's denial of legitimation. Although the legal differences are dwindling, the law still recognizes that the word "children" does not per se include illegitimate children. *King v. King*, 218 Ga. 534 (129 SE2d 147) (1962). The court should not overlook the social implications as well as the personal ramifications to the person whose measurement of self-esteem may be lowered by his status as a bastard. Even if legal discrimination does not result, public scorn and private discrimination very possibly might. These reasons no doubt contribute to the principle that the presumption of legitimacy is one of the strongest and most persuasive known to law. *Stephens v. State*, 80 Ga. App. 823, 825 (2) (57 SE2d 493) (1950). To our Georgia Constitution was recently added that one of its purposes is to "promote the interest and happiness . . . of the family." Const. of Ga. 1983, Preamble. Here we have the only living parent of a child seeking from the law the recognition of that relationship.

Probably the most significant result of legitimation is acquisition by the child of the rights of inheritance. *Hicks v. Smith*, 94 Ga. 809 (22 SE 153) (1894). As pointed out in the statute, he and his kin are now put on an equal par with other children. OCGA §§ 19-7-22, 53-4-4 and 53-4-5. Although these statutes were broadened in 1980 to draw certain other categories of illegitimates into the inheritance scheme, they still require some formal judicial establishment of the father's parentage in order for the illegitimate child to be legally recognized as having the same status as legitimates for the myriad of inheritance purposes. See the discussions in the recent cases of *Poulos v. McMa-*

*han*, 250 Ga. 354 (297 SE2d 451) (1982) and *Carter v. Becton*, 250 Ga. 617 (300 SE2d 152)(1983). The petition for legitimation appears still to be the only court procedure by which the father can achieve it.

There is no suggestion in the record that the court took into account the ramifications of legitimacy versus illegitimacy on the child's inheritance rights. The indications are actually otherwise, when the three bases for the court's conclusion are examined. In fact, the court wrote that it could see "absolutely no benefit to this child" from legitimation. While the trial court pivoted its decision on the best interests of the child, it did so with respect to the child's best interests in terms of custody, not with respect to the child's best interests in terms of inheritance rights. If the issue of visitation is not to be considered in a legitimation case, as was held in *In re J. B. K.*, 169 Ga. App. 450, 451 (2) (313 SE2d 147) (1984), the same should apply to custody. This is the second reason I would reverse for a hearing on the matter.

The third reason I would not affirm and would remand for hearing is that this court cannot substitute its judgment for that which is solely to be based on the trial court's exercise of discretion. The trial court erroneously took into account the answer and argument and interests of the deceased mother's administrator. With those irrelevant ingredients removed, the case takes on a different hue and the exercise of discretion should be undertaken afresh by the trial court.

If the trial court were of the opinion that the child's best interests will not be advanced by the father in his pursuit of legitimation, the court could appoint a guardian ad litem to represent the child. OCGA § 29-4-7.

DECIDED DECEMBER 4, 1985 —
REHEARING DENIED DECEMBER 20, 1985 — 

*Lawson E. Thompson*, for appellant.
*Susanne F. Burton*, for appellee.