NATIONAL CITY BANK OF ROME, executor, *v.* FIRST NATIONAL BANK OF BIRMINGHAM.

478

No. 13945.   FEBRUARY 13, 1942.

*Matthews, Owens & Maddox,* for plaintiff in error.

*Leon & Dean Covington, Cabaniss & Johnston,* and *William H. Trueman,* contra.

BELL, Justice. (After stating the foregoing facts.)

■ We will consider first the questions raised by the motion for new trial. The cross-action having been stricken on demurrer, only two issues remained for trial: (1) Whether the note and indorsement, neither being under seal, were barred by the statute of limitations; (2) whether the indorsement was in effect a contract of suretyship, and thus invalid under the law of this State, the indorser being at the time a married woman.

In replying to these alleged defenses, the plaintiff offered testimony of its vice-president, C. F. Zukoski, as to various transactions between him, as an officer of the bank, and Mrs. Hall, the

testatrix. The defendant executor objected to the testimony, upon the ground that the witness was incompetent under the Code, § 38-1603. The court admitted the testimony, and this ruling was assigned as error in the motion for new trial.

The section referred to is a codification of various statutes as to competency of witnesses, and exceptions. The plaintiff in error relies on subsection 3, providing that "Where any suit shall be instituted or defended by a corporation, the opposite party shall not be admitted to testify in his own behalf to transactions or communications solely with a deceased or insane officer or agent of the corporation." This particular provision was enacted in 1889. Ga. L. 1889, pp. 85-86. In *Ullman* v. *Brunswick Title Guarantee & Loan Co.*, 96 *Ga.* 625 (24 S. E. 109), it was held that nothing in this law excludes a director or other agent of a corporation from testifying as a witness, in a case to which the corporation is a party, concerning transactions between such director or agent in behalf of the corporation and a person since deceased whose executor or administrator is the other party in the case. The law on this subject has not been amended since the decision in that case, and the construction there placed upon the statute has been approved and followed in a number of later decisions, including *DeVane* v. *DeVane*, 149 *Ga.* 783 (102 S. E. 145); *Dickson* v. *Citizens Bank & Trust Co.*, 184 *Ga.* 398 (6) (191 S. E. 379); *Nalley Land & Investment Co.* v. *Merchants & Planters Bank*, 187 *Ga.* 142 (5), 146 (199 S. E. 815). Under these authorities the court did not err in admitting the testimony of the witness Zukoski.

The note matured on May 1, 1933, and thus on its face appeared to have become barred on May 1, 1939, the suit thereon not having been filed until June 17, 1940, or thirteen months and sixteen days later. Code, § 3-705. Did the evidence for the plaintiff rebut the presumptive bar and show that the action was in time?

It appeared from the evidence that Mrs. Cora Dixon Hall was formerly a widow, Mrs. Cora Dixon, and that the other three individuals who signed the indorsement were her daughters. She and her daughters were the only heirs at law of her first husband. Under the terms of his will he bequeathed to each of them one undivided fourth interest in property situated in the State of Alabama, consisting of real estate and personalty, including choses in action. On October 18, 1928, Mrs. Hall, then Mrs. Dixon,

jointly with her daughters entered into an agreement with the American-Traders National Bank, of Birmingham, Alabama, by the terms of which the bank was appointed as trustee, and described property of the estate, of the classes aforesaid, was conveyed to it as such trustee for the benefit of the grantors. The trustee bank was later merged with the First National Bank of Birmingham, which became in law its successor, as to this transaction. Afterwards, on July 19, 1930, other property was added to the trust estate by an amendatory agreement. On August 5, 1932, the following situation existed: The American Traders National Bank had loaned to Mrs. Hall and her daughters as individuals the sum of $39,500 before the trust was created; since that time the banks had advanced for the benefit of the trust estate various sums, amounting to $31,400; and the estate was now in need of an additional loan of $6,000. In these circumstances the First National Bank of Birmingham, successor creditor as well as successor trustee, agreed with Mrs. Hall and her daughters that it would lend the additional sum, making in all $76,900, and would as trustee sign a note for this total sum payable to itself, the note to be indorsed by Mrs. Hall and her daughters, and by another person, a corporation, which need not be further mentioned in this opinion. The note was executed and indorsed on August 5, 1932, according to the agreement, and the note sued on, dated February 1, 1933, and indorsed in like manner, is a renewal of that instrument. For several years Mrs. Hall and her daughters were from time to time requested by the bank, acting through its trust department, to pay varying amounts to cover taxes and other expenses necessary in the administration of the trust, including interest. A number of letters were passed between the bank and Mrs. Hall in reference to these items, the letters of the bank being written in its behalf by an agent or officer in charge of its trust department. At the same time, the bank was trustee for an estate in which Mrs. Hall alone was interested, but as shown by the evidence there was never any indebtedness against that estate. Among the letters so passing between the parties were the following:

(Letter from the bank to Mrs. Hall)

March 4, 1935

"Mrs. Cora Dixon Hall, Rome, Ga.

"Dear Mrs. Hall: You will recall that you and Mrs. Brooke

and Mrs. Fowlkes were each to pay $200 toward the interest of the Dixon estate to the Commercial Department. You have paid one half of your share, and we suggest that we be authorized to pay the other $100 to the Commercial Department, charging the same to your trust account. Mrs. Fowlkes has paid her share of the interest, and arrangements have been made with Mrs. Brooke for the payment of the balance of her share. If the above suggestion meets with your approval, kindly execute and return to us the enclosed letter.

"Yours very truly, Walter W. Kennedy, Assistant Trust Officer."

(Mrs. Hall's reply)

"Rome, Georgia, March 6th, 1935

"The First National Bank of Birmingham,

"Trust Department, Birmingham, Alabama.

"Gentlemen: You are hereby authorized to withdraw $100 of principal from my trust account and pay the same to the Commercial Department of the First National Bank of Birmingham, to be credited on interest of the note of the Dixon estate, which note bears my endorsement.

"Yours very truly, (s) Mrs. Cora Dixon Hall."

The signatures were proved to be genuine, and the letters were admitted without objection. Still other letters were introduced, but in the view which we take of the case their contents need not be stated.

In reference to the foregoing, C. F. Zukoski, vice-president of the plaintiff bank in charge of its trust department, testified as follows: "This letter dated March 6, 1935, . . and signed Cora Dixon Hall, was received by me. . . On none of these dates specified did the Dixon Heirs Trust owe any other note due to the First National Bank of Birmingham. Since 1930, when the two banks merged, there has never been any other note upon which Mrs. Hall signed her name in any capacity, that is the only note, the Dixon Trust note, and that is the only indebtedness [on] which she is directly or indirectly indebted to the First National Bank; and there is only one Dixon Trust; and the Dixon Heirs Trust that we speak about is that . . created by the Living Trust, dated October 18, 1928." Referring to the note "sued upon," the witness further testified: "There was no other note except this one. That is the only note."

Under the foregoing evidence, none of which was in any way disputed, we think the judge was right in directing the verdict against the plea of the statute of limitations. A new promise may renew a right of action already barred, or constitute a new point from which the limitation shall commence to run on a right of action not yet barred, provided it is in writing and signed by the promisor or some one authorized by him. Code, § 3-901; *Rich* v. *DuPree,* 14 *Ga.* 661; *Comer* v. *Allen,* 72 *Ga.* 1 (4). It is also declared in the Code that a "written acknowledgment of the existing liability shall be equivalent to a new promise to pay." Code, § 3-903. An express promise to pay is unnecessary; for, as thus provided, a mere acknowledgment of the liability shall be the equivalent of a new promise. "A distinct admission of a present subsisting debt is such an acknowledgment as will take a case out of the statute of limitations. It is not necessary that the party should express himself willing and liable to pay. This would be an express promise. A promise is implied from an acknowledgment that a particular debt is still due." *Bulloch* v. *Smith,* 15 *Ga.* 395, 398.

Manifestly, the letter signed by Mrs. Hall, as quoted above, *was* an acknowledgment of some debt (*Brewer* v. *Brewer,* 6 *Ga.* 587; *Webb* v. *Carter,* 62 *Ga.* 415), and we pass to the question of identification. Was it the debt which is now in suit?

Under the statute of frauds, any promise to revive a debt barred by a statute of limitation must be in writing and signed by the promisor or some person lawfully authorized by him. Code, § 20-401 (6). This without more would require that the debt be identified, and that the new promise or acknowledgment should itself furnish the identification, or afford the means therefor. *Gartrell* v. *Linn,* 79 *Ga.* 700 (2) (4 S. E. 918); *Slack* v. *Sexton,* 113 *Ga.* 617 (38 S. E. 946); *Duke* v. *Lynch,* 56 *Ga. App.* 331 (192 S. E. 535). But, as in a contract for the sale of land, if the writing supplies a key by which the subject-matter may be identified with the aid of extrinsic evidence, it is in this respect a sufficient compliance with the statute. Compare *Swint* v. *Swint,* 147 *Ga.* 467 (2) (94 S. E. 571); *Smith* v. *Federal Land Bank of Columbia,* 181 *Ga.* 1 (2), 3 (181 S. E. 149).

The note sued on had not become barred on the date of the quoted reply letter of Mrs. Hall; and thus, strictly speaking, we do not have the question of reviving a debt already barred.

In some jurisdictions it is held that where the debt is still alive, it requires less evidence to show a new promise than after the debt is barred; but it seems that no such distinction has hitherto been drawn in this State, and we need not consider the question here. In any view, the letter quoted above, considered with the extrinsic evidence, was sufficient to identify the note and the indorsement sued on. It appeared from the evidence that they answered the description contained in the letter, to wit, "the note of the Dixon estate, which bears my endorsement," and that there was no other note or indorsement meeting such description. *Brewer* v. *Brewer,* 6 *Ga.* 587; *Webb* v. *Carter,* 62 *Ga.* 415; *Duncan* v. *Redd,* 14 *Ga. App.* 306 (2, *a, b*) (80 S. E. 726); *Martin* v. *Mayer,* 63 *Ga. App.* 387 (2) (11 S. E. 2d, 218). See generally, as to description and identification, *King* v. *Sears,* 91 *Ga.* 577 (2) (18 S. E. 830); *King* v. *Brice,* 145 *Ga.* 65, 67 (88 S. E. 960); *Little* v. *Saunders,* 163 *Ga.* 842 (2) (137 S. E. 49); *Hicks* v. *Walker Brothers Co.,* 31 *Ga. App.* 395 (2) (120 S. E. 694).

The debt being otherwise sufficiently identified, it was unnecessary that the amount thereof be stated. 37 C. J. pp. 1102-3; 34 Am. Jur. 247, 248, §§ 306, 308.

There is no merit in the contention that the letter was insufficient as an acknowledgment because addressed to the trust department instead of the commercial department of the creditor bank. There was only one corporation or one entity to which the debt was owed, and the letter containing the acknowledgment was addressed to that entity. Both of the letters above quoted mentioned payment to the commercial department, and contemplated action thereby. Taken together, they show affirmatively an intention by Mrs. Hall that the contents of her letter should be communicated to and influence the bank as her creditor.

In these circumstances, the acknowledgment was sufficient as related to the parties; and this is true regardless of whether the officers in the trust department had authority to act for the bank in matters of indebtedness. See, in this connection, 37 C. J. 1136-1139, § 617; 34 Am. Jur. 254, § 319.

This conclusion accords with the decisions in *Abercrombie* v. *Butts,* 72 *Ga.* 74 (53 Am. R. 832); *Carnes* v. *Bank of Jonesboro,* 58 *Ga. App.* 193 (4) (198 S. E. 338), where on different facts acknowledgments were held insufficient from the standpoint of parties addressed.

The acknowledgment dated March 6, 1935, fixed a new point from which to calculate the limitation period; and so, with or without the executor's twelve-months exemption from suit, the debt was not barred at the time the suit was filed. The evidence might have shown still other reasons why the debt was not barred.

■ The next question for determination is whether the evidence would have authorized a verdict for the defendant on the plea as to suretyship. The following facts appeared: The trust agreement was executed by the testatrix and her daughters in the State of Alabama, and the appointed trustee was a corporation of that State. The agreement also shows upon its face that all of the property conveyed was situated in that State, and that in the main the duties of the trustee were to be performed there. It recited that each of the trustors, or grantors, owned one undivided fourth interest in the property, and that they desired to relieve themselves of care of this property "to the extent hereinafter set forth." So far as appears, there was no other object in view. The agreement contained, among others, the following provisions: That the trust estate should be divided initially into four equal shares, for which four certificates of beneficial interest would be issued, one to each of the grantors, the form of the certificate being set forth; that the trustees should hold the property in trust for the holders of such certificates, which certificates would be assignable; but that the trustee would be entitled at all times to deal with the person whose name appeared of record on its books as the holder, and would not be chargeable with notice of any transfer before such record.

The agreement further provided for a board of advisors, consisting of one representative for each of the four shares and one representative of the trustee, each to have one vote accordingly, and the trustee's member to serve as chairman. The representative of any of the four beneficial shares was subject to removal at any time at the option of the holder, on stated conditions as to notice and other matters not here material. Any vacancy thus occurring was to be filled by the same authority, except that in case of delay by the shareholder for thirty days, the vacancy might be filled by a majority vote of the remaining members of the board. The first members of the board were named in the agreement. The management of the estate was entrusted generally to this board, the proceedings of which were to be duly recorded in minutes to be

kept under the direction and supervision of the chairman. Powers and duties of the trustee were enumerated, some of which could be exercised independently and without approval of the board of advisors, while others required such approval as a condition of authority to act. Still other provisions were as follows:

"IV. Revocation of Trust. The trust herein created may be terminated at any time, by a resolution adopted at any meeting of the board of advisors, by the vote of at least three of the four representatives of the interests conveyed by the undersigned trustors or by written notice of revocation signed by any three out of said four members of the board of advisors and duly served upon the trustee, and in the event of such revocation the trustees shall proceed forthwith to liquidate the trust and make distribution of the trust property, either converting the trust estate in whole or in part into cash and making distribution of such cash or by distributing in kind the personal assets and conveying the real estate to the beneficiaries of the trust in proportion to their respective interests therein, as evidenced by certificates of interest held by them, one or both, all as may be directed by the vote of the board of advisors.

"V. Concerning the Trustee. . . The trustee shall be reimbursed and indemnified against any and all liability, loss or expense caused by the holding of any property constituting a part of the principal of the trust estate, and shall have a lien upon the principal of the trust estate and the income therefrom for the amount of any liability, loss or expense which may be so incurred by it, including the expense of maintaining or defending any action or proceeding instituted by or against it by reason of any such holding. . .

"The compensation of the trustee for its services hereunder shall be such as may be fixed from time to time by the board of advisors. . .

"The trustee may resign at any time by giving thirty days written notice to the board of advisors, and may likewise be removed at any time upon thirty days written notice from the board of advisors, and in the event of its resignation or removal shall convey to a successor trustee or trustees as may be directed by the board of advisors all of the trust property after first deducting the compensation due it under the provisions hereof, and such successor trustee shall succeed the rights, powers, and privileges and be sub-

488

ject to all the duties herein given to or imposed upon the trustee."

It is contended by counsel for the defendant, plaintiff in error, that the trust agreement created what is sometimes called a "business" or "Massachusetts" trust; that the resulting entity possessed the attributes of a corporation, and that the certificates of beneficial interest were therefore in the nature of stock certificates. On this premise counsel invoke the principal that a married woman may not be held liable upon a mere accommodation indorsement of a note executed by a corporation in which she is a stockholder, Mrs. Hall being a married woman at the time of the indorsement sued on. *Durham* v. *Greenwold,* 188 *Ga.* 165 (3 S. E. 2d, 585) ; *Greenwold Grift Co.* v. *Durham,* 191 *Ga.* 586 (13 S. E. 2d, 346). While the indorsement recited a valuable consideration, for present purposes we may assume that the *evidence* showed no consideration beyond her interest in the trust estate. Even in this view we can not agree that the principal relied on has any application under the facts of the case.

Since it appears that the contract was executed, and was to be performed, in Alabama, its validity and effect should be determined by the Alabama law, so far as it is shown or is to be presumed, provided it is not contrary to the public policy of this State. Code, § 102-108; *Sally* v. *Bank of Union,* 150 *Ga.* 281 (3) (103 S. E. 460) ; *Ulman, Magill & Jordan Woolen Co.* v. *Magill,* 155 *Ga.* 555 (117 S. E. 657) ; *Clark* v. *Baker,* 186 *Ga.* 65 (2), 75 (196 S. E. 750). No statute or law of the State of Alabama having been pleaded, it is presumed that the common law prevails in that State. *Southern Railway Co.* v. *Cunningham,* 123 *Ga.* 90 (50 S. E. 979) ; *Slaton* v. *Hall,* 168 *Ga.* 710, 716 (148 S. E. 741) ; *Trustees of Jesse Parker Williams Hospital* v. *Nisbet,* 189 *Ga.* 807, 811-812 (7 S. E. 2d, 737). It seems that under the common law as construed in some States, a trust agreement of this kind might be treated as valid. 65 C. J. pp. 1086-1092, §§ 1025-1031. Whether it might be sustained under the common law as construed by the courts of this State is a question which we pass without decision, in view of other common-law principles which we deem controlling. As having perhaps some bearing on that question, see Code, § 108-112; *Gray* v. *Obear,* 54 *Ga.* 231; *Sargent* v. *Burdett,* 96 *Ga.* 111 (22 S. E. 667) ; *Terrell* v. *Huff,* 108 *Ga.* 655 (34 S. E. 345) ; *City of Rome* v. *Shropshire,* 112 *Ga.* 93 (37 S. E. 168) ; *Thompson* v.

*Sanders,* 118 *Ga.* 928 (45 S. E. 715); *Clark* v. *Baker,* supra. If the agreement was void, the title to the property remained in the grantors, and the designated trustee would have no authority to act as such. Upon that theory, the note executed by the bank would be the equivalent of an original undertaking by them as the only parties at interest, and there would be no semblance of suretyship. Stated differently, their indorsements would merely ratify the unauthorized act of one assuming to represent them, thus rendering them liable as principals. But even if the instrument should be treated as valid, still, in view of the control reserved to the trustors or their representatives, there was no relationship such as that of stockholder and corporation and no basis for the claim as to suretyship. In 2 Bogart on Trusts, 944, § 294, it is stated: "In order to have squarely presented the question of the possibility of securing exemption from personal liability for the shareholders, the trust must be one in which the shareholders have reserved no powers of control over the business or in which the powers reserved are not extensive. It is uniformly held that if the cestuis may dictate on questions of the management of the trust, they are liable for the debts. This liability is usually rested on the theory that the organization is not then a trust but a partnership or joint-stock association in which the trustees are mere agents."

In another recent work on trusts is a statement to the same general effect, as follows: "Where a business trust is created, that is a trust for the carrying on of a business in which the interests of the beneficiaries are represented by transferable certificates, the beneficiaries may become personally liable upon obligations to third persons incurred by the trustees in the administration of the trust. By the weight of authority it is held that the beneficiaries are not personally liable if the trustees are merely trustees. When, however, the beneficiaries have power to control the conduct of the trustees to such extent that the trustees are their agents, the beneficiaries are personally liable as principals. They are not liable as principals, if they simply have power to compel the trustees to perform their duties under the trust, as in the case of ordinary trusts; but if they have power to control the conduct of the business in detail, if they have power to substitute new trustees, they are liable as principals. It is not always easy to draw the line between trust and agency in such cases, since the difference is one of degree.

Where there is sufficient power of control over the trustee so that there is an agency relationship and not merely a trust, the beneficiaries are liable as partners in the carrying on of the business. In some States the courts have held that the beneficiaries of a business trust are personally liable even though by the terms of the trust they have no control over the conduct of the trustees. The basis for imposing liability is that the use of the trust as a substitute for the corporate device is against the public policy, as tending to evade the policy of the law against limited liability without incorporation." 2 Scott on Trusts, 1541, § 274 (1).

These statements appear to accord generally with numerous decisions on the question. In view of the control reserved to the beneficiaries under the instant contract, including the power to remove their representatives and fill vacancies, and the further power to remove the trustee *through* their representatives, who would constitute a majority, the beneficiaries were virtually in complete command, and the entity created, if any, was in the nature of a partnership, rather than a corporation. See 65 C. J. 1087-1090, § 1027; Frost *v.* Thompson, 219 Mass. 360 (106 N. E. 1009) ; Howe *v.* Chmielinski, 237 Mass. 532 (130 N. E. 56) ; Flint *v.* Codman, 247 Mass. 463 (142 N. E. 256) ; Goldwater *v.* Altman, 210 Cal. 408 (292 Pac. 624, 71 A. L. R. 871) ; Otoe County National Bank *v.* DeLany, 88 Fed. 2d, 238. It follows that the trustee acted for the beneficiaries as their common agent, and that they would have been liable on the note regardless of their indorsement, provided the trustee in so acting did not exceed its authority. While it is insisted that no such authority was conferred by the original agreement, this appears to be immaterial, since the note was indorsed by the beneficiaries, and this amounted to a ratification. Such being the case, the act of indorsement by Mrs. Hall did not purport to create the relation of surety.

A married woman and another or others may lawfully enter into a joint contract or undertaking the consideration of which passes to them jointly, and in such case she will be bound. *Braswell* v. *Federal Land Bank of Columbia,* 165 *Ga.* 123 (4) (139 S. E. 861). It appeared from the evidence, without dispute, there was no suretyship as to Mrs. Hall within the meaning of the Code, § 53-503, prohibiting suretyship by a married woman; and consequently the court did not err in directing the verdict against the defendant as

to this issue. See *Wright* v. *Shorter*, 56 *Ga.* 72 (2), 76; *King* v. *Thompson*, 59 *Ga.* 380 (4); *Love* v. *Lamar*, 78 *Ga.* 323 (3 S. E. 90); *White* v. *Fulton*, 68 *Ga.* 511; *Waldrop* v. *Veal*, 89 *Ga.* 306 (15 S. E. 310); *Vizard* v. *Moody*, 119 *Ga.* 918 (2, 3) (47 S. E. 348); *Braswell* v. *Federal Land Bank of Columbia*, supra; *Pinckney* v. *Weil*, 183 *Ga.* 567 (189 S. E. 8); *Cook* v. *Hightower*, 13 *Ga. App.* 309 (2) (79 S. E. 165).

Nothing said above is intended to imply that such indorsement by a beneficiary would have created the relation of surety, even if the terms of the trust agreement had been different as to powers conferred and reserved.

■ The final question is whether the court erred in sustaining the plaintiff's demurrer and striking the cross-action. As indicated in the statement, it was alleged by the defendant that the will of Mrs. Hall was unlawful in so far as she attempted to name the First National Bank of Birmingham as executor to administer properties situated in Alabama; and that such nominated executor, having received appointment and assumed to act as such without authority, should in this suit by it be required to account to the defendant, the National City Bank of Rome, which was nominated as executor to administer the Georgia properties. In the brief, certain statutes and decisions of this State were cited and relied on to support the assertion that Mrs. Hall, as a resident of Georgia, could not lawfully appoint a non-resident corporation as executor; but the contention does not rest entirely on this basis. It was stated in the trust agreement that the interest of each shareholder, as evidenced by certificate, should be deemed to be personalty, and it was alleged in the answer that this and all other property of the testatrix which was situated in Alabama at the time of her death consisted of personalty. The position of counsel thus embraces the contention that as to such property, jurisdiction for the purpose of administration would be limited to Georgia, the State of the decedent's residence. Again we find it unnecessary to follow through with counsel. The first question naturally arising in this connection is whether the defendant as executor was in position to make these contentions; and since we have concluded that it was not, we will determine this branch of the case on that ground.

The will, after disposing of various items of property, some located in Alabama and others in Georgia, proceeded to nomination

of executors as follows: "I hereby nominate and appoint the National City Bank of Rome, Georgia, as executor of this my last will and testament, in so far as any properties located in the State of Georgia are concerned; and I hereby nominate and appoint the First National Bank of Birmingham, of Birmingham, Alabama, as executor of this my last will and testament, in so far as any properties located in the State of Alabama are concerned." Upon consideration of the will as a whole, it is apparent that the references to location contained in this item were intended as matter of description by physical location, and that the National City Bank of Rome, the defendant, was nominated as executor only as to such properties as were physically located in the State of Georgia. As to its authority as executor, the bank is bound of course by the terms of the will; and since it was appointed as executor only as to properties actually located in this State, it has in that capacity no authority whatever as to other property. It follows that, regardless of all other questions, the defendant was not entitled to an accounting as to properties "located in the State of Alabama." *Printup* v. *Trammell,* 25 *Ga.* 240, 242; *Latine* v. *Clements,* 3 *Ga.* 426, 431; Code, § 113-1504. The court properly sustained the demurrer to the cross-action, and under the evidence did not err in directing the verdict in favor of the plaintiff on the remaining issues.          *Judgment affirmed. All the Justices concur.*