## A98A2166. HEATH v. WHEELER et al.
### (507 SE2d 508)

ELDRIDGE, Judge.

Beatrice Alston Wheeler, individually, and Glenn C. Goodwin, as executor of the estate of Sarah Alston Goodwin, who died March 1, 1994 ("plaintiffs") sued Johnny Chris Heath, Sr., executor of the estate of Cecil Will Alston, deceased ("defendant") for their promised share of their father's estate plus interest. Such debt was evidenced by promissory notes dated January 1983, from their brother, Cecil Will Alston, administrator of the estate of Cecil C. Alston, their father. Under the will of Cecil C. Alston, probated in solemn form, the residuary estate was left equally to his three children: Sarah Alston Goodwin, Beatrice Alston Wheeler, and Cecil Will Alston. Besides land, the estate of Cecil C. Alston had as its primary asset a debt owed by Cecil Will Alston to his father of $35,670. As executor personally indebted to the estate on a pre-existing note, Cecil Will Alston did not pay off the note and cancel the note as satisfied; he allowed the debt to continue. For Cecil Will Alston as the executor of the estate of Cecil C. Alston to distribute the debt owed by him to his father's estate, Cecil Will Alston acknowledged his individual debt to each of his sisters and individually and as executor promised to pay each of them $11,890, plus interest to settle the Estate of Cecil C. Alston, which was a partial assignment of the debt with new evidence of indebtedness given to each sister. Cecil Will Alston received his one-third share of the asset, i.e., his debt to his father, by forgiveness of $11,890 of the debt. Cecil Will Alston executed and delivered to his sisters written evidence of his personal obligation owed to the estate. At the conclusion of the administration of their father's estate and again in January 1983, Alston promised to pay each of them $11,890 plus interest; interest but no principal was paid by Alston until his death on November 10, 1992. The promissory notes contained no due date. Subsequent to the execution of these notes, Cecil Will Alston paid interest on the notes through 1992 and sent his sisters IRS forms 1099 for the interest he paid them each year.

On July 5, 1983, Beatrice Alston Wheeler cashed a $7,000 certifi-

cate of deposit and loaned her brother, Cecil Will Alston, the money to purchase a tractor, and Alston gave Wheeler a promissory note for $7,000 with interest at ten percent and no maturity date, which remains unpaid and has accrued interest since November 2, 1992. Alston paid the interest on the note through December 31, 1992. Some 14 personal checks from Cecil Will Alston to his sisters were introduced, as well as IRS forms 1099, for the years 1986, 1987, 1988, and 1992.

The plaintiffs demanded payment on January 12, 1994. The defendant answered timely. The parties filed cross-motions for summary judgment. The trial court granted summary judgment for the plaintiffs and denied summary judgment for the defendant. Defendant timely filed his notice of appeal.

Cecil Will Alston's widow acknowledged the debts and that they had not been paid. The executor of the estate of Cecil Will Alston, his stepson, was unable to personally deny that such debt was owed.

1. The first enumeration of error is that the trial court erred in granting summary judgment to the plaintiffs on Count 1 "because the 'notes' dated January, 1983, were executed by Cecil Will Alston as 'Executor of the Estate of Cecil C. Alston,' and neither Cecil Will Alston nor the Estate of Cecil Will Alston was or is personally liable for such 'notes.' " We do not agree.

The notes were given by Cecil Will Alston, the executor of the estate of Cecil C. Alston, as a partial distribution of the assets of the estate in final settlement and as such were evidence of the indebtedness of the estate for such uncollected funds, as well as a partial assignment of Cecil Will Alston's personal debt to Cecil C. Alston. Since the personal debt of Cecil Will Alston to the estate of Cecil C. Alston was the principal asset, Cecil Will Alston personally canceled, substituted, and indebted himself individually to the plaintiffs on two new personal notes to evidence their shares of his individual debt to the estate that he had canceled. Thus, Cecil Will Alston made the distribution of the assets of the estate, consisting of his personal debt to the estate, his personal debt to his sisters in his representative capacity as executor as well as individually. However, the notes that he was distributing were his personal debt, the primary asset of the estate. Therefore, to divide his debt to the estate three ways, he made out two new personal notes for his personal debt, which he delivered to his sisters and canceled his prior note held by the estate, which thus satisfied his share of the estate.

As a fiduciary, Cecil Will Alston, the executor of the estate of Cecil C. Alston, had the fiduciary duty to pay his personal debt to his father's estate *prior* to the settlement of the estate, and he breached such duty by not paying off the debt and distributing the principal to his sisters. *Ray v. Andrews*, 46 Ga. App. 676, 678 (2) (168 SE 906)

(1933); accord *Henson v. Jones*, 66 Ga. App. 22 (16 SE2d 886) (1941). However, Alston obtained the consent of the heirs, his sisters, to accept his new personal notes in lieu of his being required to satisfy his prior personal debt to the estate, so that he became personally liable on the new notes, which amounted to a partial assignment of his prior personal debt. When Cecil Will Alston got his sisters to take this "paper," he closed the estate without collecting his underlying debt, and the estate had no further assets for him to administer. The only reason to keep the estate open would be to collect his debt, which he had now deferred and made payable to his sisters. The estate, if it was indebted on the notes, had nothing with which to satisfy the notes unless Cecil Will Alston paid off his earlier debt to the estate. Therefore, the notes given by Cecil Will Alston were not the debts of the estate, but were evidence of his personal debts now payable to his sisters, instead of payable to the estate. It was the intent of all parties that Cecil Will Alston's new notes to the sisters be substituted for his debt to the estate and their share of the assets of the estate, i.e., Cecil Will Alston's debt. Thus, the evidence clearly established Cecil Will Alston's personal debt, and the description after the signature on the notes of Alston does not excuse him from such personal liability. See OCGA § 11-3-402 (b) (2) (formerly OCGA § 11-3-403); *Glisson v. E. A. Weil & Co.*, 117 Ga. 842 (45 SE 221) (1903); *Yeomans v. Coleman &c. Drug Co.*, 167 Ga. App. 646 (307 SE2d 121) (1983).

The parol evidence clearly established the intent of the parties, i.e., that Cecil Will Alston personally intended to become indebted to the plaintiffs. See *Seamon v. Acree*, 142 Ga. App. 662 (236 SE2d 688) (1977); accord *Talmadge v. Respess*, 224 Ga. App. 768, 770 (2) (482 SE2d 709) (1997); *Cooley v. Dickerson & Swift Entertainment*, 177 Ga. App. 855 (341 SE2d 504) (1986); *Casey v. Carrollton Ford Co.*, 152 Ga. App. 105 (262 SE2d 255) (1979).

2. The second enumeration of error is that "[t]he trial court erred in granting summary judgment to [plaintiffs] as to Count I of [plaintiffs'] Complaint because the 'notes' which form the basis of Count I of [plaintiffs'] complaint were signed January, 1983, and [plaintiffs] did not file suit to collect the 'notes' until September 9, 1994, and therefore, the statute of limitations had expired." We do not agree.

OCGA § 9-3-112 provides that "[a] payment entered upon a written evidence of debt by the debtor or upon any other written acknowledgment of the existing liability shall be equivalent to a new promise to pay." Thus, the annual payment of interest from 1987 until Alston's death in 1992 acted as a renewal of the promise to pay even if the statute of limitation would have run but for such payments. See *Siefferman v. Peppers*, 159 Ga. App. 688 (285 SE2d 61) (1981); accord *Middlebrooks v. Cabaniss*, 193 Ga. 764 (20 SE2d 10) (1942); *Nat. City*

*Bank &c. v. First Nat. Bank &c.*, 193 Ga. 477, 481 (2) (19 SE2d 19) (1942); *Garrett v. Lincoln Cemetery*, 148 Ga. App. 744 (252 SE2d 650) (1979); *Hudson v. Sadtler*, 100 Ga. App. 232 (110 SE2d 706) (1959).

OCGA § 9-3-110 provides that "[a] new promise, in order to renew a right of action already barred or to constitute a point from which the limitation shall commence running on a right of action not yet barred, shall be in writing, either in the party's own handwriting or subscribed by him or someone authorized by him." "A distinct admission of a present subsisting debt is such an acknowledgment as will take a case out of the statute of limitations. It is not necessary that the party should express himself willing and liable to pay. This would be an express promise. A promise is implied from an acknowledgment that a particular debt is still due. [Cit.]" (Punctuation omitted.) *Nat. City Bank &c. v. First Nat. Bank &c.*, supra at 484. The clear evidence of the debt still being due was the checks paying interest, as well as the IRS forms 1099. The statement of Cecil Will Alston's widow regarding the debt also corroborated that Alston, himself, still considered the debt due and payable.

3. The third enumeration of error is that the trial court erred in granting summary judgment to Wheeler on Count 2, "because [plaintiff] is neither the payee nor the holder in due course of said 'note' and said 'note' is, therefore, unenforceable by [plaintiff]." We do not agree.

While Alston prepared the note on a Bank of Dawson form note, the parties intended that the note be paid to Wheeler, and the bank employee who prepared the note testified to such intent. Alston delivered the note to Wheeler and paid interest on the note from July 5, 1983, until December 31, 1992.

Under OCGA § 13-2-3, it is for the trial court to determine the intent of the parties. From the evidence, it is clear that Alston received $7,000 from Wheeler and, in return, Alston promised to pay the loan at ten percent per year to Wheeler. Since this was an action between Wheeler as payee and Alston as the payor, then it did not matter that the note was not negotiable, because it was a contract to pay the loan. See *Nelson v. Nelson*, 176 Ga. App. 107 (335 SE2d 411) (1985).

4. The fourth enumeration of error is that the trial court erred "when, in considering the parties' cross motions for summary judgment, the trial court only considered the pleadings of the parties before it granted [plaintiffs'] motion for summary judgment." We do not agree.

Whether or not the trial court erred in not considering the depositions on file in this case in the trial court, upon de novo review, this Court considers the grant of summary judgment on the entire record, which included such depositions and pleadings. See *Matjoulis v.*

*Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997); *Rice v. Huff*, 221 Ga. App. 592, 593 (472 SE2d 140) (1996). Thus, upon review of the entire record, we find that the trial court did not err in granting summary judgment on Counts 1 and 2. See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED OCTOBER 2, 1998 —

*Ellis, Easterlin, Peagler, Gatewood & Skipper, James M. Skipper, Jr.,* for appellant.

*Donaldson, Hall, Martin & Bell, C. Truitt Martin, Jr., Bowles & Bowles, Jesse G. Bowles III,* for appellees.