**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 14, 2014**

# In the Court of Appeals of Georgia

A13A2121. SKC, INC. v. EMAG SOLUTIONS, LLC.

BRANCH, Judge.

SKC, Inc. filed suit against eMag Solutions, LLC, in Fulton County State Court, seeking to recover amounts owed on eMag's account with SKC. The parties filed cross-motions for summary judgment, and the trial court granted summary judgment in favor of eMag, based on its conclusion that the applicable statute of limitations had expired. SKC now appeals from that order, asserting that the trial court erred in granting eMag's motion for summary judgment and in denying SKC's motion. We agree that the trial court erred in finding that SKC's claims are time-barred and therefore reverse the grant of summary judgment in favor of eMag. Additionally, because the undisputed evidence shows that eMag owes some amount of money on

its account with SKC, we remand for entry of judgment in favor of SKC on the issue of eMag's liability on the account and for a determination of SKC's damages.

In an appeal from the grant or denial of a motion for summary judgment, we apply a de novo standard of review, viewing the evidence, including any reasonable conclusions and inferences that it supports, in the light most favorable to the nonmovant. *Gayle v. Frank Callen Boys & Girls Club*, 322 Ga. App. 412 (745 SE2d 695) (2013). Additionally, where the relevant facts are undisputed, we owe no deference to a trial court's ruling on whether an action is barred by the statute of limitations, as that question is one of law. See *Lloyd v. Prudential Securities*, 211 Ga. App. 247, 249 (2) (438 SE2d 703) (1993).

The record shows that SKC is a manufacturer of polyurethane film and that during the relevant time period it also sold what it describes as "digital media products." eMag describes itself as an electronic discovery company. In December 1999, eMag submitted a credit application to SKC, and SKC thereafter began selling products to eMag on account. Between May 17 and June 18, 2001, SKC made six product shipments to eMag, with the invoices for those shipments totaling $366,647.[1]

---

[1] These invoices were authenticated by Emmarine Byerson, SKC's Credit and Risk Manager, who testified that they were kept in the regular course of SKC's business.

eMag thereafter became severely delinquent on its account and on October 16, 2001, Ron Lanquist, eMag's CFO at the time, sent a letter to Byerson acknowledging that eMag owed SKC $331,104 and offering to return merchandise worth $121,319 and to settle the remaining debt for 20 cents on the dollar. Byerson responded on behalf of SKC on November 20, 2001. In its response, SKC rejected eMag's offer, requested full payment of the amount owed (which SKC contended was $366,246.69) by November 30, 2001, and stated that if payment was not made by that date, SKC would consider "other means of collection." When eMag failed to make any payments on the account, SKC's assistant general counsel sent eMag a demand letter on December 21, 2001, notifying the company that eMag's continued failure to pay an amount SKC now stated as "$366,647.04, exclusive of interest," would "result in further legal action by SKCA."

Although eMag did not immediately make any payments on the amount owed, Byerson testified that SKC did not sue on the account at that time because eMag was "an important customer," particularly with respect to SKC's digital media products. Byerson further explained that as a general rule, so long as a customer was making some effort to pay on its account, SKC would forego attempting to collect the debt "by means other than working with the customer." In this case, the parties continued

negotiations regarding the outstanding balance on eMag's account, and on April 23, 2002, Steve Fiddler, who was then the CFO of eMag, sent an email to Byerson confirming their telephone conversation earlier that day regarding payment on the account. Fiddler wrote:

> eMag . . . has proposed to issue wire payments of $6,000 per month through December 2002 against our outstanding payable to SKC. . . . In December 2002, we will re-evaluate our financial condition and attempt to increase the monthly payment amount for calendar 2003 and beyond. We greatly appreciate your patience as we attempt to resolve this payable balance. We have issued the first wire payment of $6,000 today.

The following day, Byerson responded via email acknowledging receipt of "the initial payment of $6,000" and informed Fiddler that she was "sending today via Fed-X [sic] copies of invoices and statement of account."

A current statement of eMag's account produced by SKC reflects that eMag made monthly wire transfer payments of $6,000 on its account for the months of April 2002 through October 2003, inclusive; made no payments for the months of November and December 2003 and January 2004; made a payment of $3,000 in February 2004; made monthly payments of $1,500 for the months of March 2004

4

through May 2008, inclusive;[2] and made a payment of $3,000 on July 29, 2008. SKC also obtained printouts from its bank evidencing the wire transfer payments it received from eMag for the months of January through May 2006, inclusive; October 2006; January through December 2007, inclusive; January through May 2008, inclusive; and July 2008. Each of these printouts contains a line for "originator [eMag] to beneficiary [SKC] info"; on each of these lines one of the following notations appears: "payment on account," "on account," "eMag on account," or "payment on past due account." These payments totaled $196,500 which, when subtracted from the invoice totals of $366,647, leaves a balance on those invoices of $170,147.

Fiddler, in his capacity as CFO of eMag, sent a letter to SKC on January 16, 2006, stating that eMag was undergoing an annual audit and that the auditors "desire that [SKC] furnish directly to them . . . the amount of [eMag's] liability to [SKC] (if any) as of December 31, 2005 and a statement of our account as of that date." SKC responded on January 26, 2006, reporting to the auditors that eMag owed SKC $214,746.69 as of December 31, 2005. On February 7, 2007, Fiddler sent SKC another audit letter asking for SKC to provide eMag's auditors with the amount of

---

[2] eMag made no payments for the month of May 2005, but made two separate payments of $1,500 each in June 2005.

5

eMag's liability to SKC as of December 31, 2006. SKC responded on February 27, 2007, stating that eMag owed it $151,906 as of December 31, 2006.[3]

eMag designated as its 30 (b) (6) representative its current CFO, James Mauck. Mauck, who was first employed by eMag in May 2011, testified that eMag disputed the invoices relied on by SKC as evidence of the debt because "there's nobody [currently employed] at eMag that has knowledge of whether these invoices are accurate, whether they are real." Mauck admitted, however, that eMag's records from 2006 and 2007 "show that eMag owed some amount of money to SKC." He also acknowledged that eMag's "hard copy records" from early 2007 showed an account payable balance to SKC. Mauck further explained that two events occurred in 2008 that may have affected eMag's records with respect to any outstanding debt to SKC. First, in 2008 eMag obtained new auditors and following their initial audit, no debt to SKC was reflected on eMag's balance sheets. Additionally, in 2008 eMag converted to a new data system, and some of the information shown on eMag's balance sheets starting in 2009, following this conversion, could not be reconciled with information from the company's 2008 balance sheet.

---

[3] It is unclear from the record how SKC arrived at the amount owed as of December 31, 2006, as the statement of account it presented reflects that eMag would have owed it $196,746.69 (exclusive of interest) as of that date.

6

When questioned, Mauck, who had previously worked as a financial auditor, acknowledged that it would be "fair to say" that a creditor would not receive an audit letter like those received by SKC unless the company being audited had acknowledged that the creditor was owed a debt. Mauck also admitted that although eMag could not locate all of its bank statements for the relevant time period, those that it could locate showed that between February 2004 and December 2007 eMag made twenty payments totaling $31,500 to SKC. He further acknowledged that eMag made a payment of $3,000 to SKC on July 29, 2008.

1. SKC contends that the trial court erred in finding that its claim is time-barred. We agree.

Under Georgia law, the statute of limitations for an action on an open account is four years. OCGA § 9-3-25. Normally, the limitations period begins to run either on the date payment becomes due or on the date the creditor demands repayment. See *Avery Enterprises v. Lyndhurst Builders*, 304 Ga. App. 353, 355 (696 SE2d 389) (2010); *Murphy v. Varner*, 292 Ga. App. 747, 748 (1) (666 SE2d 53) (2008). Georgia law further provides, however, that "[a] payment entered upon a written evidence of debt by the debtor or upon any other written acknowledgment of the existing liability shall be equivalent to a new promise to pay." OCGA § 9-3-112. And each new

promise to pay constitutes a new point from which the statute of limitations begins to run, provided two conditions are met. See OCGA § 9-3-110. Specifically, the acknowledgment of the debt must be communicated to the creditor and it "must sufficiently identify the debt or afford the means by which [the debt] might be identified with reasonable certainty." *Middlebrooks v. Cabaniss*, 193 Ga. 764, 767 (1) (20 SE2d 10) (1942).

Applying these principles, Georgia's appellate courts have previously held that when payment to a creditor is accompanied by some notation sufficient to identify the debt being paid, that payment and notation constitute a new promise to pay which renews the running of the limitations period. See *Middlebrooks*, 193 Ga. at 768 (1); *Heath v. Wheeler*, 234 Ga. App. 606, 609 (2) (507 SE2d 508) (1998); *Garrett v. Lincoln Cemetery*, 148 Ga. App. 744, (252 SE2d 650) (1979). In *Middlebrooks*, a debtor had made payments on a promissory note by checks made payable to the creditor and bearing the notation, "'[p]ayment on my . . . note' or expressions of the same import." 193 Ga. at 768 (1). Given these facts, and because the debtor had only one note with the creditor, the Georgia Supreme Court found that the checks represented a series of new promises to pay. Id. Similarly, in *Garrett*, an accountant sued to recover for amounts owed on an audit the accountant had performed for the

defendant. The trial court granted judgment in favor of the defendant, finding that because the debt had accrued more than four years earlier the action was barred by the statute of limitations. We reversed, noting that in the four years before suit was filed the defendant had made payments on the debt by check. On one check the defendant had written "Legal & Audit on Acct.," and on the other it had written "[Defendant's] Bal. $6,500." *Garrett*, 148 Ga. App. at 744. Because the defendant "only had one account with the plaintiff," we found that the checks represented a new promise to pay and renewed the running of the limitations period. Id.

In this case, SKC presented evidence showing that eMag had accrued a debt in excess of $300,000 to SKC, had acknowledged that debt in writing, and had agreed in writing to make monthly payments on the debt. SKC also presented additional documentary evidence demonstrating the debt and eMag's acknowledgment of the same, including SKC's business records of eMag's account and printouts from SKC's bank evidencing the monthly wire transfer payments made by eMag over an approximately six-year period. Additionally, each of the printouts evidencing eMag's wire transfer payments contains a notation from eMag indicating that the payment was to be applied to the debt on its account. The evidence further shows that eMag had only one account with SKC.

9

Given the evidence of record, we find that the wire transfer payments containing the notations regarding eMag's account with SKC constituted new promises by eMag to pay its debt to SKC, and sufficed to renew the running of the limitations period. Because the last such payment was received by SKC on either July 29 or 30, 2008, the statute of limitations began to run on that date. Accordingly, the current lawsuit, which was filed on March 1, 2012, is not time-barred and we therefore reverse the grant of summary judgment in favor of eMag.

2. In an attempt to avoid a significant portion of its liability to SKC, eMag argues that even if the wire transfers renewed the statute of limitations, they did so only with respect to the oldest three of the six invoices at issue. In support of this argument, eMag points to the testimony of Byerson, who stated that when SKC received a payment from eMag, it would apply the credit to the oldest outstanding invoice on the account. Given SKC's bookkeeping method, eMag reasons that each wire transfer constituted a new promise to pay only that invoice to which SKC was applying the payment. Because under SKC's bookkeeping system no payment was ever credited to the three most recent invoices, eMag concludes that it never made a new promise to pay those invoices. It therefore contends that the statute of limitations

10

has expired with respect to those invoices and that it cannot be held liable for the amounts billed thereon. We disagree.

As noted above, eMag had only one account with SKC, to which all invoices were billed. And when it initiated payment negotiations, eMag did not reference specific invoices; instead, it referred to the lump sum owed on its account with SKC. Additionally, all of the communications between the parties spoke of the amount owed on eMag's account, rather than separate amounts owed under individual invoices. Finally, eMag's notations on its payments made by wire transfer reflect that the payments were to be applied to eMag's account, rather than to a specific invoice. In light of the foregoing, the mere fact that, as an internal bookkeeping matter, SKC chose to allocate eMag's payments to a specific invoice does not change our conclusion that eMag's payments represented new promises to pay the entire amount owed on its account. See *All Tech Co. v. Laimer Unicon*, 281 Ga. App. 579, 580 (636 SE2d 753) (2006) (where plaintiff was seeking to recover payment for all invoices billed to defendant's account over a two-year period, trial court properly treated action as one on an open account).

3. SKC also appeals the denial of its motion for summary judgment. We agree that the trial court erred in denying SKC's motion as to eMag's liability for the

11

amount owed on its account. SKC came forth with evidence demonstrating the debt, including invoices, the statement of eMag's account,[4] documentary evidence of eMag's wire transfer payments, and the testimony of Byerson, who had personal knowledge of eMag's account with SKC. eMag failed to come forward with any evidence to refute SKC's showing. Notably, the person that eMag designated as its 30 (b) (6) representative had worked for the company for approximately one year, had no personal knowledge of eMag's account with SKC, acknowledged that at some time between 2008 and 2009 evidence of eMag's account with SKC disappeared from eMag's balance sheets, and admitted that eMag owed SKC "some amount of money."

Although SKC established that it was entitled to summary judgment on the issue of eMag's liability, we find that based on the current record, SKC is not entitled

---

[4] We find no merit in eMag's assertion, which it fails to support with any citation to legal authority, that the statement of account relied on by SKC and authenticated by Byerson constitutes inadmissible evidence. See OCGA § 24-8-803 (6) (report, record, or data compilation made in the regular course of business and authenticated by the record custodian or other qualified witness fall within an exception to the hearsay rule and are admissible); *Minor v. E. F. Hutton & Co.*, 200 Ga. App. 645, 646 (2) (409 SE2d 262) (1991) (in an action for amounts due on an account, affidavit of creditor's employee, "setting forth the amount it claimed was due which, together with attached statements of account that were admissible as business records" supported a grant of summary judgment in favor of creditor) (citation omitted).

to summary judgment on the amount of damages it is claiming.[5] With respect to the amount owed on eMag's account, the documentary evidence produced by SKC contains some inconsistencies.[6] It may be that on remand these inconsistencies can be explained, but that evidence is not currently before us. Additionally, there is no evidence in the record showing how SKC calculated the amount of interest it claims is owed on eMag's account. Accordingly, we reverse the grant of summary judgment in favor of eMag and remand this case for entry of judgment in favor of SKC on the issue of eMag's liability on its account, with the amount of damages to be determined in further proceedings consistent with this opinion.

*Judgment reversed and case remanded with direction. Phipps, C. J., and Ellington, P. J., concur.*

---

[5] We emphasize that our holding in this appeal does not mean that SKC's damages will never be susceptible to summary adjudication. We are simply holding that based on the current record, the amount of damages is insufficiently certain.

[6] The statement of account reflects an original amount owing of $366, 647, against which SKC credited the payments it received. In November 2001, however, SKC sent a letter to eMag stating that the amount due on its account was $366, 246.69. And this letter was sent in response to correspondence from eMag, in which that company acknowledged a debt to SKC of $331,104. Finally, the amount SKC told eMag's auditors was owed on eMag's account as of December 31, 2006 is approximately $40,000 less than SKC's account records show was due as of that date, and is approximately $20,000 less than SKC claims is currently owed on the account.