A99A1787. HALL v. COLEMAN et al.

(530 SE2d 485)

POPE, Presiding Judge.

We granted Steven Hall's application for discretionary appeal in the adoption proceedings of his biological child. Hall appeals the superior court's order denying his motion for new trial, which effectively denied his petition to legitimate the child and terminated his

parental rights.[1] For the following reasons, we conclude that the superior court erred, and we reverse.

The record establishes the following facts. Steven Hall and Nancy Hobby were married on February 27, 1997, after Hobby told Hall that she was pregnant with his child. Hall and Hobby ended their relationship at some point in the summer of 1997. On October 1, 1997, the child of Hall and Hobby, whose adoption is at issue in this case, was born. Although the date is not clear from the record, at some point, Hall learned that his marriage to Hobby was void because she had not been divorced from a prior marriage when she and Hall wed.

On January 12, 1998, Ricky and Laura Coleman filed a petition to adopt the child. The petition stated that the child's biological father was "unknown." Simultaneously, the Colemans filed a Surrender of Rights and Consent to Adoption, which was signed by Hobby. In her accompanying affidavit, Hobby stated again that the child's biological father was unknown. Hobby further stated that on the child's birth certificate she listed the child's father as "Cecil James Sherman," because she wanted the "name of someone" to appear as father. She gave the child the last name "Sherman." She also stated that the child's father was not married to her when the child was conceived or born.

The record contains two notices to "Unknown Fathers," notifying the putative fathers of the upcoming adoption proceedings on March 18, 1998; Hall received one of these notices. He filed a motion to intervene in the adoption action. Hall claimed that the child was legitimate because Hall was married to Hobby when the child was born. Hall also claimed that he was the biological father of the child. In responsive pleadings, the Colemans claimed that Hobby was party to a prior, undissolved marriage and that her marriage to Hall was a legal nullity.

The court held an untranscribed hearing on the matter. Furthermore, the court ordered a blood test and gave Hall 30 days to file a petition to legitimate. On April 24, 1998, Hall filed the petition.

The court held the hearing on Hall's petition on November 20, 1998. At the hearing, Hall claimed that despite the fact that the marriage was bigamous, the child was legitimate and he was entitled to legal custody. The court reserved ruling on the legitimacy issue and received evidence on whether Hall had lost his opportunity interest in the child so as to allow a denial of the petition to legitimate.

During the hearing, Hall claimed that Hobby repeatedly misled him as to the identity of the child's father. Hall testified that both

---

[1] Hall also filed a direct appeal, which this Court dismissed.

Hobby's father and Hobby told Hall that the child was not his and that Hall believed the child was not his until he received notice of the adoption.

After hearing the evidence, the court denied Hall's petition to legitimate. Based on the results of the DNA parentage testing, the court determined that Hall *is* the child's biological father. Nevertheless, the court found that under OCGA § 19-8-1, Hall was not the "legal father" of the child because his marriage was bigamous and void. Finally, the court concluded that Hall had lost his opportunity interest in the child and also denied the petition for legitimation on that ground. After the court entered this order, the court granted Hall's motion to stay the adoption proceedings pending the resolution of the appellate process on the legitimation issue.

1. In his first enumeration of error, Hall argues that the court erred in failing to find that his child, as the child of a bigamous marriage, was legitimate. Hall asserts that under OCGA § 19-3-5 (a) a child is legitimate if a bigamous marriage has not been declared void when the child is born. Based on this statute, Hall argues that his child was legitimate and the adoption statute (OCGA § 19-8-1 et seq.) was inapplicable.

In response, the Colemans argue that the court's reliance on the definition of legal father under OCGA § 19-8-1 was proper. They claim that because none of the statutory definitions under that statute were applicable, the trial court properly determined that Hall was not the legal father.

For the following reasons, we agree with Hall's arguments and reverse. OCGA § 19-3-5 (a) provides: "Marriages of persons unable to contract, unwilling to contract, or fraudulently induced to contract shall be void. *However, the issue of such a marriage born before the marriage is annulled and declared void by a competent court shall be legitimate.*" (Emphasis supplied.)

In *Brazziel v. Spivey*, 219 Ga. 445 (133 SE2d 885) (1963), our Supreme Court determined that the children born of a marriage that subsequently was declared void were legitimate. In so deciding, the court relied upon the predecessor of OCGA § 19-3-5 (a) and concluded that in enacting the statute the legislature intended to remove the stigma of illegitimacy from innocent children. Thus, the court determined, if the parents participated in a marriage ceremony, even though the marriage might ultimately be void, children born before the marriage was annulled or declared void were legitimate.[2] The

---

[2] The *Brazziel* court discussed whether the legislature intended to create a distinction between the issue of marriages in which the parties were innocent of the void nature of the marriage and sham marriages. We need not address that distinction in this case because there was no evidence that Hall knew of Hobby's prior undissolved marriage.

legislature's intent in rendering children of void marriages legitimate has been recognized repeatedly by Georgia courts. See, e.g., *Thompson v. Brown*, 254 Ga. 191, 193 (1) (326 SE2d 733) (1985); *Campbell v. Allen*, 208 Ga. 274, 279 (2) (66 SE2d 226) (1951); *Andrews v. Willis*, 133 Ga. App. 697, 699 (212 SE2d 24) (1975).

In this case, Hall and Hobby "married" in February 1997; the court concluded that the "marriage" was motivated in part by the parents' concern that Hobby was pregnant. Hall and Hobby did not live together after the summer of 1997; the child was born in October 1997. There is no evidence in the record that Hall was aware that the marriage was void before the child was born; certainly there was no evidence that the marriage had been annulled or declared void by a competent court before that time.[3]

Accordingly, under OCGA § 19-3-5 Hall and Hobby's child was legitimate because the child was the issue of the marriage,[4] born before the marriage was declared void. We now turn to the next issue: whether Hall was the "legal father" of the child, as that term is defined for purposes of the adoption provisions, OCGA § 19-8-1 et seq.

OCGA § 19-8-1 (6) (B) provides that the term "legal father" for purposes of adoption includes a male who: "[w]as married to the biological mother of that child at the time the child was conceived or was born, unless such paternity was disproved by a final order pursuant to Article 3 of Chapter 7 of this title."[5] OCGA § 19-8-1 (6) (E) states that a "legal father" is also a male who has "legitimated the child by a final order pursuant to Code Section 19-7-22."

Given these provisions, it would be nonsensical to conclude that Hall was not the "legal father" of his legitimate child. Although Hall's marriage to Hobby was void, only an overly narrow construction of OCGA § 19-8-1 would result in the determination that Hall was not the "legal father" of the child. If, as stated in subsection (6) (E), the definition of "legal father" includes those males who have legitimated children, then certainly the father of a child who is already legitimate should fall within the "legal father" definition. Moreover, although Hall's marriage was ultimately deemed void, for purposes of qualifying as a "legal father" under subsection (6) (B), Hall was "married" to Hobby at the time of the child's birth.

In making this determination, we emphasize that this is not a

---

[3] Hall subsequently remarried in June or July 1998. Hall indicated that he remarried when he learned that his marriage to Hobby had been void. Hobby was in jail during part of her pregnancy and apparently during the legitimacy hearing.

[4] See OCGA § 19-7-20 (a).

[5] Article 3 of Chapter 7, which addresses the determination of paternity, is not applicable here because based on the DNA tests, the court concluded that Hall is the child's biological father. See OCGA § 19-7-46 (b).

case in which another male has presented himself as the "legal father" of the child. Compare *In re White*, 254 Ga. 678 (333 SE2d 588) (1985) (necessary that biological father serve "legal" father in legitimation proceeding). Despite Hobby's misrepresentation of the child's father in the birth certificate, Hall was the only person who asserted that he was the father. Furthermore, this case did not involve the provisions of OCGA § 19-7-20 (b), because there was no evidence regarding the possibility of access. See generally *Ghrist v. Fricks*, 219 Ga. App. 415 (465 SE2d 501) (1995); *Miller v. Miller*, 258 Ga. 168 (366 SE2d 682) (1988).

Where a child is legitimate, the father has a claim to parental and custodial rights with respect to the child. See *Mitchell v. Ward*, 231 Ga. 671, 672 (203 SE2d 484) (1974). In this case, because the child was legitimate and the court did not comply with the correct provisions of the adoption statute, it was error for the court to overrule Hall's objections to the adoption proceedings. See generally OCGA § 19-8-7 (c), (d), (e); see *Ellis v. Woods*, 214 Ga. 105, 108-109 (4) (103 SE2d 297) (1958). Upon remand, the court is directed to determine whether adoption is proper in this case based on the appropriate provisions of the adoption statute. See, e.g., OCGA §§ 19-8-3 through 19-8-6; 19-8-10.

2. Based on our conclusion in Division 1, we need not address Hall's second enumeration based on *In re Baby Girl Eason*, 257 Ga. 292 (358 SE2d 459) (1987), which addresses the interests of unwed fathers.

*Judgment reversed and case remanded. Smith and Miller, JJ., concur.*

DECIDED MARCH 2, 2000 — 

*Shaffer, Raymond & Dalton, Philip T. Raymond III, Kevin P. Bradley*, for appellant.
*McLendon & Smith, Verna L. Smith*, for appellees.