## A03A1084. HALL v. COLEMAN et al.
### (592 SE2d 120)

Mikell, Judge.

This is the second appearance of this matter before this Court. In the first, *Hall v. Coleman*[1] (*Hall I*), Ricky and Laura Coleman filed a petition to adopt A. S., a minor child, in Laurens County Superior Court. Attached thereto was the biological mother's surrender of rights and consent to adoption, which indicated that the child's biological father was unknown. Steven Hall received notice of the upcoming adoption proceeding and filed a motion to intervene and stay the adoption, claiming that he was A. S.'s biological father and that the child was legitimate.[2] The trial court ordered a blood test, and Hall filed a petition to legitimate, which the trial court denied on the grounds that Hall was not the child's "legal father" because his marriage to the child's mother was bigamous, and therefore, void, despite DNA testing that proved Hall was the child's biological father.[3] We reversed the trial court's denial of the petition, holding that the "child was legitimate because the child was the issue of the marriage, born before the marriage was declared void[,]"[4] and that Hall was the child's legal father.[5] On remand, we instructed the trial court "to determine whether adoption is proper in this case based on the appropriate provisions of the adoption statute."[6] Hall took no affirmative action to acquire custody of A. S. after our ruling and has taken no such steps to date.

On May 15, 2001, the Colemans filed two additional actions, one to terminate Hall's parental rights and the other for custody of A. S. The parties agreed to consolidate the three actions filed by the

---

[1] 242 Ga. App. 576 (530 SE2d 485) (2000).
[2] Id. at 577.
[3] Id. at 577-578 (1).
[4] (Footnote omitted.) Id. at 579 (1).
[5] Id.
[6] Id. at 580 (1).

Colemans for an evidentiary hearing and to include the evidence from Hall's legitimation action for the court's consideration. The trial court entered three separate orders, granting the adoption, terminating Hall's parental rights, and granting the Colemans custody of A. S. Hall appeals, enumerating as error the entry of each order.

As stated in *Hall I*, the record shows that

> Hall and Nancy Hobby were married on February 27, 1997, after Hobby told Hall that she was pregnant with his child. Hall and Hobby ended their relationship at some point in the summer of 1997. On October 1, 1997, the child of Hall and Hobby, whose adoption is at issue in this case, was born. Although the date is not clear from the record, at some point, Hall learned that his marriage to Hobby was void because she had not been divorced from a prior [husband] when she and Hall wed.[7]

Hall did not provide any support, including medical care, to Hobby when she was pregnant or during her hospitalization after she gave birth to A. S. Within 30 days of his birth, A. S. was voluntarily placed with the Colemans by the Department of Family and Children Services, after Hobby abandoned him. A. S. has remained in the custody of the Colemans since that time.

Hall testified that Hobby was four or five months pregnant when he left her; that he was not present at A. S.'s birth; that he has only spoken to A. S. once for a few minutes after a court proceeding; that he has never made any other effort to visit with A. S., including asking his attorney to call the Colemans to arrange a visit; and that he has not asked any third party, including social services, to arrange a visit. Hall also testified that years ago he asked his mother to buy a Christmas present for A. S. and to send it to his lawyer; that he has not sent the child any cards or letters nor called him on the telephone; that he learned of A. S.'s health problems from his attorney; that he has not provided any health care for A. S.; that he never called or tried to get a report from A. S.'s doctor to learn about the child's health conditions; that he did not know what medications the child was taking; and that he knew absolutely nothing about A. S. because he had made absolutely no effort to find out anything.

Hall admitted that he did not know about the dental care his son received or the costs associated therewith; that he never gave money to his attorney to give to the Colemans or otherwise contributed toward A. S.'s support and care; that he has never given supplemental care of any kind to A. S.; and that he has been employed during

---

[7] Id. at 577.

the course of these proceedings. Finally, Hall declared that he would not contribute toward A. S.'s support or care while the child was not in his custody.

Laura Coleman testified that A. S. has had pneumonia, asthma, and eczema; that his teeth had to be capped because of a fluoride deficiency; that the child is routinely taken for medical and dental care; that the child calls her "mama," her husband, "daddy," her mother, "grandma," her husband's mother, "nannie," and her husband's father, "grandpa"; and that he refers to a host of other relatives as "aunt" and "uncle." Ricky Coleman's testimony was consistent with his wife's. He also testified that he asked his attorney to ask Hall's counsel for child support and that he received no support from Hall or from any other source.

Donald Meck, a licensed psychologist, was qualified as an expert. Dr. Meck testified that he interviewed the Colemans and A. S. on June 18, 2002; that psychologically, A. S. thinks the Colemans are his parents; and that there was no better place for A. S. than with the Colemans. Additionally, Dr. Meck opined that if the child were removed from the Colemans' custody, he would

> have difficulty meeting the developmental tasks at that age level. We would expect the child to experience increased fear and anxiety because [his] emotional needs will no longer be met. The secure base is taken away from the child, therefore, we would expect the child to regress, to become younger, more immature, would not progress cognitively, intellectually. We would expect basically a regression from the child until the child can establish a primary care relationship with someone else which will take approximately the same time.

Dr. Meck further opined that to remove A. S. from the Colemans' home would devastate him.

On cross-examination, Dr. Meck admitted that he had not interviewed Hall and his wife or observed their homes or lifestyles, but he maintained that removing A. S. from the Colemans would cause him insurmountable problems. The court inquired as to whether age was a factor in the amount of difficulty that A. S. would experience if forced to separate from the Colemans. Dr. Meck explained that a child between the ages of three and five encounters the most difficulty with an abrupt change in his primary caregiver because at that time the child is going through cognitive changes and defines himself by his relationships with his parents. The trial court granted the Colemans' petitions.

"In matters of adoption the superior court has a very broad dis-

cretion which will not be controlled by the appellate courts except in cases of plain abuse. Thus, if there is any evidence to support the judgment entered in an adoption proceeding, it must be affirmed by this court."[8] Because we find no abuse of discretion, we affirm.

1. The trial court found that the adoption was proper under OCGA § 19-8-10 (a) because Hall abandoned A. S. Our appellate courts have held that "in order to find abandonment, there must be sufficient evidence of an actual desertion, *accompanied by an intention to sever entirely,* as far as possible to do so, the parental obligations growing out of the same, and forego all parental duties and claims."[9] Because the circumstances in this case do not comport with this definition, in that Hall's pursuit of this litigation arguably shows that he did not intend to sever entirely his parental obligations, we are constrained to find that the adoption was not proper under OCGA § 19-8-10 (a) (1). However, "a judgment right for any reason will be affirmed on appeal,"[10] and we find that there was evidence to support the trial court's judgment under OCGA § 19-8-10 (b).

OCGA § 19-8-10 (b) authorizes a court to grant an adoption in the absence of the consent or surrender of rights of a natural parent,

> if that parent, for a period of one year or longer immediately prior to the filing of the petition for adoption, without justifiable cause, has significantly failed: (1) [t]o communicate or to make a bona fide attempt to communicate with that child in a meaningful, supportive, parental manner; *or* (2) [t]o provide for the care and support of that child as required by law or judicial decree, and the court is of the opinion that the adoption is for the best interests of that child.[11]

The existence of these factors is a "threshold matter[ ] of discretion with the trial court who has the opportunity to observe the parties and hear the evidence."[12]

The Colemans filed the petition to adopt A. S. in January 1998. At that time, they did not know the identity of A. S.'s biological father. By the time the court ordered the stay of the adoption in February 1999, Hall knew from the results of the court-ordered paternity

---

[8] (Citations and punctuation omitted.) *Findley v. Sanders*, 153 Ga. App. 146, 147 (1) (264 SE2d 659) (1980).

[9] (Citation, punctuation and emphasis omitted; emphasis in original.) *Griffith v. Brooks*, 193 Ga. App. 762, 766 (1) (389 SE2d 246) (1989). See also *Glendinning v. McComas*, 188 Ga. 345, 347 (3 SE2d 562) (1939). Accord *Crumb v. Gordon*, 157 Ga. App. 839, 840 (1) (278 SE2d 725) (1981).

[10] (Punctuation and footnote omitted.) *In the Interest of C. F.*, 255 Ga. App. 93, 95 (2) (564 SE2d 524) (2002).

[11] (Emphasis supplied.) OCGA § 19-8-10 (b).

[12] *Westberg v. Stamm*, 162 Ga. App. 369, 370 (291 SE2d 439) (1982).

testing that he was A. S.'s biological father. Yet, from that time until the present, Hall has made no attempts to communicate with A. S., except for a short conversation with the child after the legitimation proceeding. Hall has offered no justifiable explanation for his wilful failure to attempt to communicate with the child.

Hall has also admitted that he has not contributed financially toward the care and support of the child and has testified that he will not do so as long as the child is not in his custody. It is well settled that a parent's obligation to support a child does not commence with another party asking the parent to support the child. Nor can it be waived or contracted away.[13] In fact, a complete failure to make child support payments, while that child is cared for by others, may provide clear and convincing evidence of the significant failure to provide for the care and support of the child.[14] Finally, the testimony of the Colemans and Dr. Meck supported the trial court's finding that the adoption was in A. S.'s best interest. The test on appeal is that "[i]f there is any evidence to support the trial court's finding that the adoption is in the child's best interest, such finding will be affirmed."[15] The evidence presented above is sufficient to support the trial court's finding.

Hall's only argument is that the trial court's rulings were erroneous because the court did not consider the fact that he has "been pursuing his rights through the Courts of this State" as evidence of his commitment to the child. We flatly reject this argument, as the continued litigation of this matter has not prevented Hall from contacting A. S. nor has it waived his duty to support the child. There was no testimony in the record that Hall was prevented from contacting or supporting A. S. He simply chose not to do so. In fact, on the one occasion where Ricky Coleman sought support from Hall, Hall refused. Finding no abuse of the trial court's broad discretion in this type of matter,[16] we affirm the judgment of the court below.

2. In light of Division 1, we need not address Hall's remaining enumerations of error. The grant of an adoption effectually "relieves the natural parents of all parental rights and terminates all legal relationships between the adopted child and his natural parents"[17] and necessarily bestows custody upon the adoptive parents.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

---

[13] See OCGA § 19-7-2; *In the Interest of J. J.*, 259 Ga. App. 159, 162 (575 SE2d 921) (2003); *Westberg*, supra at 370; *Crumb*, supra at 841 (2) ("neither the wife nor the civil courts can take away the child's right to be provided for by both parents").

[14] *Mellies v. Dearborn*, 253 Ga. App. 138, 139 (1) (558 SE2d 460) (2001).

[15] (Citations omitted.) *Bateman v. Futch*, 232 Ga. App. 271, 274 (2) (501 SE2d 615) (1998).

[16] *Findley*, supra at 147 (1).

[17] *Arrington v. Hand*, 193 Ga. App. 457, 458 (4) (388 SE2d 52) (1989).

DECIDED NOVEMBER 25, 2003 —
RECONSIDERATION DENIED DECEMBER 12, 2003.

*Shaffer, Raymond & Dalton, Kevin P. Bradley*, for appellant.
*Turner & Woodall, Jeffrey A. Turner, Angela Woodall, Verna L. Smith*, for appellees.