A06A0892. BAKER v. SWEAT et al.
(637 SE2d 474)

ELLINGTON, Judge.

Jerry Baker brought a wrongful death action against his ex-wife, Shirley Sweat, claiming that Sweat caused the August 2002 automobile accident that killed their daughter, Bobby Jo Baker. Baker subsequently added Patriot General Insurance Company, Sweat's insurer, as a defendant, alleging that it improperly settled all claims

---

[29] See *Armstead v. State*, 255 Ga. App. 385, 389 (3) (565 SE2d 579) (2002).
[30] *Conley v. State*, 257 Ga. App. 563, 564 (1) (571 SE2d 554) (2002).
[31] See id.

arising from the accident with unauthorized parties.[1] The defendants moved for summary judgment. In granting their motions, the Clinch County Superior Court found as a matter of law that there was clear and convincing evidence that Baker had relinquished his parental rights by failing to support, visit, or establish a relationship with Bobby Jo during her lifetime. The court concluded that, as a result, Baker lacked standing to maintain an action for her wrongful death, and dismissed Baker's complaint. On appeal, Baker contends there was not clear and convincing evidence that he had abandoned Bobby Jo and that the court improperly granted Patriot General summary judgment on the ground of abandonment. For the reasons that follow, we disagree and affirm.

"On appeal from a grant of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the nonmovant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law." (Citation omitted.) *King v. Goodwin*, 277 Ga. App. 188 (626 SE2d 165) (2006). The following facts are undisputed, unless otherwise indicated. Baker and Sweat married on February 10, 1971. They separated a few months later and then reunited, and they lived together "off and on" for the next few years. In the spring of 1975, Sweat left Baker and moved in with her mother. According to Baker, he did not know where Sweat lived after she moved out, he did not attempt to find her, nor did he know that Sweat was three or four months pregnant at the time. Sweat gave birth to Baker's daughter, Bobby Jo, on September 24, 1975.

When Bobby Jo was approximately two months old, she had a stroke and was hospitalized. Sweat called Baker and told him that their daughter was sick and in the hospital. According to Baker, this was when he first learned that he had a child with Sweat. Although Sweat testified that Baker initially denied that he was the father of Bobby Jo, Baker testified that he never challenged his paternity. Bobby Jo suffered another stroke while in the hospital and remained hospitalized for over one year.[2] According to Baker, he visited the child in the hospital several times, although he admitted that, at the time of his deposition, he could not remember what the child had been suffering from or why she had been in the hospital. Baker admitted

---

[1] Baker also added Ray Prescott, the administrator of Bobby Jo's estate, and Ray Foster, Bobby Jo's half-brother, as defendants. Prescott and Foster are not parties in this appeal.

[2] As a result of her strokes and related conditions, Bobby Jo became disabled and required additional surgery and repeated hospitalizations over the next several years. Baker acknowledged during his deposition that he did not know that Bobby Jo had been disabled until after she died.

that he never paid any of the hospital expenses for either Bobby Jo's birth or her extended hospitalization, nor did he reimburse Sweat for those expenses.

According to Baker, he went to the hospital one day and found out that Bobby Jo had been discharged. He testified that he did not visit the child after that point because he did not know where Sweat and Bobby Jo had gone, but he admitted that he did not ask the hospital for information about Sweat's address or ask friends or relatives where Sweat was living.[3] In the spring of 1977, however, Baker decided to divorce Sweat, so he contacted Sweat's stepfather, whom he had known for several years, and found out where Sweat was living. Baker then called Sweat and told her he wanted a divorce. According to Sweat, they did not discuss child support or visitation, nor did Baker ask her whether she wanted or needed child support. Baker's attorney drafted a settlement agreement that gave full custody of Bobby Jo to Sweat; the agreement was silent regarding child support and visitation by Baker. At his deposition, Baker testified, "that's the way [Sweat] wanted it. She didn't want . . . child support or . . . visitation or [anything]." Baker then went to see Sweat and had her sign the settlement agreement. Baker did not ask to see Bobby Jo, who was not quite two years old, during that visit. The divorce decree incorporated the settlement agreement, and the divorce was final on June 29, 1977. Baker never attempted to modify the divorce decree to allow him to visit Bobby Jo.

Baker admitted that, from the time he last saw Bobby Jo as an infant in the hospital until Bobby Jo's death over 25 years later, he never visited or attempted to contact Bobby Jo, never paid any child support, never sent her any gifts or cards, never paid for any of her medical care, and never inquired about her health or well-being. According to Sweat, during this time, Bobby Jo was repeatedly hospitalized, and she and Bobby Jo were on welfare. Baker admitted that he never asked Sweat if he could visit Bobby Jo, nor did Sweat ever tell him he could not visit the child. Baker also admitted that he was employed during most of this period and could have paid child support, but testified that he did not make any payments because he did not know where Bobby Jo was living. He used the same excuse to explain why he never visited or even contacted Bobby Jo. Baker acknowledged, however, that he never made any effort to locate them.

On August 23, 2002, Bobby Jo was a passenger in Sweat's car when Sweat lost control of the car and hit a tree.[4] Bobby Jo later died

---

[3] Sweat testified that she and Bobby Jo went back to live with her mother and stepfather after Bobby Jo was discharged from the hospital.

[4] Sweat did not receive a traffic citation following the accident.

as a result of the accident, and Sweat was seriously injured. According to Baker, he first learned of Bobby Jo's death from a relative about a week or two after the accident. Baker did not attempt to find out how Bobby Jo died or where she was buried, nor did he visit her grave. Baker did not pay for any of Bobby Jo's medical expenses resulting from the accident, nor did he pay any part of her funeral or burial costs.

A few months after the accident, Baker learned that Sweat's brother, Ray Prescott, had been named the administrator of Bobby Jo's estate and that Prescott and Ray Foster, Bobby Jo's half-brother, had settled a claim from the accident with Sweat's insurance company. He also learned that, as Bobby Jo's father, he might be entitled to some of the proceeds from the settlement. The record shows that Prescott and Foster had settled with Patriot General for $25,000 and had given a general release to the insurer. Pursuant to the agreement, Foster agreed to set aside fifty percent of the net proceeds of the settlement for two years in case Baker, "whose whereabouts for the past 20 years are unknown," came forward and asserted a claim arising from the accident.

According to Baker, neither Prescott nor Foster had the authority to settle with Sweat's insurance company. Consequently, Baker filed a wrongful death suit against Sweat, claiming that, because he was Bobby Jo's legal father and because Bobby Jo had no spouse or children, he alone had the right to recover for the full value of her life, as well as her pain and suffering, medical bills, and funeral expenses. Baker later added Patriot General, Prescott, and Foster as defendants, claiming that the settlement agreement was null and void. Baker also asked the trial court to issue a declaratory judgment finding that he had standing to pursue an action for Bobby Jo's wrongful death. Baker appeals from the court's determination that he lacked standing and the dismissal of his claim.

1. Baker contends the trial court erred in finding that he had relinquished his parental rights by abandoning Bobby Jo and, therefore, had no standing to maintain the wrongful death suit. We disagree.

Under OCGA §§ 19-7-1 (c) and 51-4-4, when a child (either a minor or sui juris) dies as the result of a homicide or negligence, and the child did not leave a spouse or children, the child's parents have the right to recover for the full value of the child's life.[5] In this case,

---

[5] See OCGA §§ 51-4-1 (2) (defining "homicide" as including negligence); 19-7-1 (c) (4) (adopting definitions set out in OCGA § 51-4-1 et seq.); see also OCGA §§ 51-4-5 (a) (if the parents are not entitled to maintain an action for the wrongful death of a child, the administrator of the child's estate may sue and recover on behalf of the child's "next of kin"); 19-7-1 (c) (3) (incorporating provisions of OCGA § 51-4-5).

Bobby Jo was unmarried and childless when she died. Because Sweat and Baker were divorced at the time of Bobby Jo's death, both of them would ordinarily have the right to maintain a wrongful death action. OCGA § 19-7-1 (c) (2) (C). Sweat, however, could not assert a wrongful death claim that was based upon her own negligence as the driver in the single-car accident which caused Bobby Jo's death. See *Belluso v. Tant*, 258 Ga. App. 453, 455 (574 SE2d 595) (2002) (the decedent's spouse was precluded from recovering for his spouse's death, which resulted from his negligence, because he would have to sue himself in order to recover, which is a legal impossibility). Baker, on the other hand, could assert a wrongful death claim under the above-cited statutes. This does not, however, conclusively establish that he had standing to maintain the claim.

Under OCGA § 19-7-1 (b) (3), a parent may lose his or her parental power by failing to provide necessaries for the child or by abandoning the child. In order for the trial court to find an abandonment, "there must be clear and convincing evidence of an actual desertion, accompanied by an intention to sever entirely the parental relation." (Citations, punctuation and emphasis omitted.) *Uniroyal Goodrich Tire Co. v. Adams*, 221 Ga. App. 705, 706 (1) (472 SE2d 518) (1996). If it is established that a parent has lost his or her parental power under OCGA § 19-7-1 (b), the parent's right to share in the proceeds of a claim for the wrongful death of his or her child is also forfeited. *Dove v. Carver,* 197 Ga. App. 733, 735 (399 SE2d 216) (1990) (recognizing that a legal father could lose the right to recover for the wrongful death of his child if it is shown by clear and convincing evidence that he had abandoned the child); *Ramos v. Ramos*, 173 Ga. App. 30, 31-33 (2) (325 SE2d 415) (1984) (accord).

As shown above, it is undisputed that Baker learned that he was the biological father of Bobby Jo when she was two months old, yet he failed to provide any financial support for her or pay for any of her medical care during her extended hospitalization. Baker admitted that, from the last time he saw Bobby Jo as an infant in the hospital until she died over 25 years later, he never financially supported, visited, or even attempted to contact her. Further, Baker acknowledged that he never attempted to gain custody of or visitation with Bobby Jo, and the undisputed evidence showed that there was a complete absence of any parent-child relationship between Baker and Bobby Jo. In addition, Baker admitted that he was employed during Bobby Jo's lifetime and could have paid child support, but did not. Simply put, the undisputed evidence clearly shows that Baker completely failed to fulfill any of his parental obligations to Bobby Jo during her lifetime.

Baker claims, however, that he did not support, visit, or contact Bobby Jo because he did not know where she lived. This excuse lacks

merit. Baker repeatedly admitted that he never even attempted to find out where Sweat and Bobby Jo were living. There was no evidence that Sweat ever tried to hide Bobby Jo from Baker or that she ever prevented Baker from seeing Bobby Jo. Further, there was no evidence that the location where Sweat and Bobby Jo were living was a secret or that Baker could not have found them by asking Sweat's relatives living in the area. In fact, Baker admitted that, when he wanted a divorce in 1977, he easily found out where Sweat was living by asking her stepfather, whom he had known for years. Under the circumstances, Baker's claim that he did not know where Bobby Jo lived does not provide a reasonable justification for his complete failure to support, visit, or establish a relationship with her. See *In the Interest of S. H.*, 181 Ga. App. 438, 438-439 (352 SE2d 621) (1987) (because the father offered no reasonable excuse for his admitted failure to support his child for several years, he was not entitled to custody of the child after the child's mother died); *Bridgman v. Elders*, 213 Ga. 257, 258 (1) (98 SE2d 547) (1957) (accord).

Baker also claims that he did not pay child support for Bobby Jo because the divorce decree did not require it. Again, this excuse lacks merit. First, as noted above, Baker failed to support Bobby Jo or pay anything toward her medical care for almost two years *before* the divorce was final. He has offered no explanation or excuse for this failure. Second, the divorce decree was silent on child support; while it did not require Baker to pay support for Bobby Jo, it certainly did not prevent him from doing so. Baker admitted that he was employed and able to pay support, yet he never voluntarily paid support. Nor did he attempt to modify the decree to clarify his support obligations and other parental rights. Third, even if Sweat consented to the absence of a support provision in the divorce decree and never asked Baker to help support Bobby Jo, this did not relieve Baker of his obligation to do so. Parents have a statutory obligation to support their children, even if there is not a court order requiring them to do so, and Sweat could not legally waive this obligation. OCGA § 19-7-2;[6] *Hall v. Coleman*, 264 Ga. App. 650, 654 (1) (592 SE2d 120) (2003).

> It is well settled that a parent's obligation to support a child does not commence with another party asking the parent to support the child. Nor can it be waived or contracted away. In fact, a complete failure to make child support payments, while that child is cared for by others, may provide clear and

---

[6] "It is the joint and several duty of each parent to provide for the maintenance, protection, and education of his or her child until the child reaches the age of majority, dies, marries, or becomes emancipated, whichever first occurs, except as otherwise authorized and ordered." OCGA § 19-7-2.

convincing evidence of the significant failure to provide for the care and support of the child.

(Footnotes omitted.) *Hall v. Coleman*, 264 Ga. App. at 654 (1). See *Crumb v. Gordon*, 157 Ga. App. 839, 841-842 (2) (278 SE2d 725) (1981) (a child has a right to be supported by both parents and one parent cannot contract away that right; therefore, a provision in a divorce decree that waives the child's right to support is void); see also *Dept. of Human Resources v. Cowan*, 220 Ga. App. 230, 231-232 (1) (469 SE2d 384) (1996) (because a parent has a statutory obligation to support his child, he cannot relieve himself of the obligation by simply surrendering his parental rights and consenting to the child's adoption, and must continue to pay support until the child is actually adopted). Accordingly, Baker cannot justify his failure to support Bobby Jo simply because he was not forced to pay under the divorce decree. See *In the Interest of S. H.*, 181 Ga. App. at 438-439.

Baker also argues that a parent's "mere failure" to provide support for a child who is in the custody of another person does not constitute abandonment when the custodian does not request or need child support. See *Uniroyal Goodrich Tire Co. v. Adams*, 221 Ga. App. at 706 (1).[7] While Sweat apparently never asked Baker for child support, it is indisputable that Sweat and Bobby Jo had an ongoing *need* for child support, as well as assistance with medical bills and other necessities. As shown above, Baker has offered no reasonable excuse for failing to maintain a relationship with Bobby Jo and provide necessary financial support. Moreover, this is not a case where Baker simply failed to pay child support. Instead, there is clear and convincing evidence that Baker never attempted to find Bobby Jo or establish a relationship with her for over 25 years and that he unjustifiably failed to fulfill *any* of his parental obligations toward Bobby Jo.

Accordingly, the record supports the trial court's finding that Baker relinquished his parental rights by failing to support, visit, or establish a relationship with Bobby Jo during her lifetime. See *In re A. J. A.*, 164 Ga. App. 210, 212 (4) (296 SE2d 103) (1982) (the mother's failure to communicate and support her child, her surrender of the

---

[7] In *Adams*, the mother who was attempting to recover for her daughter's death had custody of the child for eleven years before she turned over custody to the child's father, with whom the child stayed until she died six years later. *Uniroyal Goodrich Tire Co. v. Adams*, 221 Ga. App. at 706 (1). The Court found that, even though the mother had little contact with her child after giving up custody, the mother expressly retained her right to reacquire guardianship over the child in the future. Id. Further, the Court ruled that her failure to pay child support to the child's father did not establish abandonment because no child support "[was] ever needed or requested." Id. Accordingly, the Court found that the mother had not relinquished her parental rights and had standing to pursue her wrongful death claim. Id.

child to another with no demand for return of the child, and her lack of concern and even disregard for the child's well-being demonstrated the mother's actual desertion of the child and her intention to sever the parental relationship). Therefore, the trial court did not err in finding that Baker lacked standing to pursue his wrongful death case and in dismissing the case on that basis.

2. Baker argues that the trial court erred in granting Patriot General's motion for summary judgment on the ground of abandonment, arguing that its motion did not raise this issue. Given our decision in Division 1, supra, affirming the court's dismissal of Baker's wrongful death claim based upon its finding that Baker lacked standing to assert the claim, this enumeration is moot.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED OCTOBER 13, 2006.

*Sherry S. Harrell*, for appellant.

*Eason, Kennedy & Crawford, Richard B. Eason, Jr., David S. Crawford, Coleman, Talley, Newbern, Kurrie, Preston & Holland, Wade H. Coleman, Charles R. Reddick*, for appellees.