A06A1476. BLACKSTONE v. BLACKSTONE.
(639 SE2d 369)

BERNES, Judge.
This appeal raises the question of whether and under what conditions a father can forfeit his right to inherit as an heir from his adult son's estate. Following the death of his brother, appellee Scott David Blackstone filed a petition to determine heirship in the superior court and requested the court to find that appellant Cal Blackstone, Sr.'s treatment of his son during his son's lifetime resulted in a loss of parental power and a consequent loss of the right to inherit as an heir from his son's estate. The superior court granted Scott Blackstone summary judgment, holding that Cal Blackstone had in fact forfeited his right to recover from his son's estate. We are constrained to reverse the trial court's grant of summary judgment because there is no Georgia law under which the loss of parental power also results in the parent's loss of a right to inherit as an heir from a child's estate, short of having the parent's rights terminated prior to the child's death.[1]

We conduct a de novo review of the evidence on appeal from a grant of summary judgment, viewing the facts and inferences in the light most favorable to the nonmovant. *Moore v. Mack*, 266 Ga. App.

---

[1] Georgia law specifically provides that a parent whose rights have been terminated during the life of his or her child cannot recover from the child's estate. See OCGA §§ 15-11-93; 15-11-94.

847, 848 (598 SE2d 525) (2004). So viewed, the record shows that Cal Blackstone's son, Corey Blackstone, was killed by a drunk driver on October 14, 2004. At the time of his death, Corey was 24 years old and did not have a spouse or children. He died intestate and the parties assert that the only assets at issue are the potential proceeds from a wrongful death and/or survival action.

Scott Blackstone is Corey's oldest brother. He filed a petition for temporary letters of administration in the Probate Court of Dawson County and was appointed temporary administrator of the estate by that court. Corey and Scott Blackstone have six other siblings, all of whom consented to Scott Blackstone's appointment as administrator.

On January 28, 2005, Scott Blackstone filed a petition to determine heirship in the Superior Court of Dawson County. In the petition, he alleged that Cal Blackstone had forfeited his parental rights to Corey when Corey was a minor and, therefore, lost his right to inherit as an heir from Corey's estate. In support of his petition, Scott Blackstone set forth evidence illustrating that Cal Blackstone's involvement with Corey during his minority was scant at best.[2] Cal Blackstone spent the majority of Corey's childhood in prison. His extensive criminal record includes numerous convictions for DUI, and convictions for both vehicular homicide and cruelty to children.

During the periods of time when Cal Blackstone was not incarcerated, Cal Blackstone physically and emotionally abused Corey, his mother and his siblings. Corey's mother was killed in 1987 and after her death, Corey and his twin brother lived with a series of relatives because Cal Blackstone was incarcerated or had inadequate resources for their care.

In January 1996, when Corey and his twin brother were 15 years old, they went to live with Cal Blackstone for the first time. During that time, they frequently stayed with family friends or relatives due to conflicts with their father. In September 1996, the Department of Family and Children Services ("DFCS") was notified that the children were being abused and, during their initial visit, Cal Blackstone struck Corey on the legs with a belt in the presence of the DFCS worker. By October 1996, Corey had been removed from his father's care and placed in the custody of DFCS due to the physical abuse. In its temporary placement order, the juvenile court adjudicated Corey deprived and found that Corey had been physically abused by Cal Blackstone. The juvenile court also noted that Corey's father consented to his placement with DFCS. Cal Blackstone never appealed this order.

---

[2] It is not clear from the record whether Cal Blackstone is also the natural father of Scott Blackstone.

In May 1997, the juvenile court placed Corey into Scott Blackstone's custody until he reached the age of majority.[3] DFCS had previously awarded Scott Blackstone custody of Corey' twin brother.

Following Corey's death, Cal Blackstone filed a wrongful death action in the Superior Court of Fulton County. Scott Blackstone subsequently filed the instant petition in the Superior Court of Dawson County to determine heirship. In its order granting Scott Blackstone summary judgment, the court held that the record contained adequate, undisputed evidence of cruel treatment by Cal Blackstone toward Corey. The court also held that Cal Blackstone forfeited his parental rights through his cruel treatment of Corey and thus lost his status as a parent and, in so doing, lost his right to recover as an heir of Corey's estate. The trial court acknowledged that no Georgia statute covers this precise issue, but relied heavily on *In re Estate of Lunsford*, 359 N.C. 382 (610 SE2d 366) (2005), a case which we find inapposite. *Lunsford* was predicated on a North Carolina statute which specifically provided for a parent's loss of the right to intestate succession in any part of a child's estate where the parent had wilfully abandoned the child. N.C. Gen. Stat. § 31A-2.

We find no authority under Georgia law to warrant a holding that Cal Blackstone's right to recover as an heir under the laws of descent and distribution was forfeited by his treatment of and/or lack of support for Corey during his son's lifetime. While the type of cruel treatment alleged in this case may result in the loss of parental power and consequent loss of a parent's right to bring and recover the proceeds from a wrongful death action for the homicide of a child, Georgia's laws of descent and distribution are silent on the issue.[4] See OCGA §§ 19-7-1 (b) (6); 51-4-5 (a); 53-2-1; *Baker v. Sweat*, 281 Ga. App. 863, 867 (1) (637 SE2d 474) (2006) ("If it is established that a parent has lost his or her parental power under OCGA § 19-7-1 (b), the parent's right to share in the proceeds of a claim for the wrongful death of his or her child is also forfeited.") (citations omitted); *Dove v. Carver*, 197 Ga. App. 733 (399 SE2d 216) (1990).

We cannot extend the loss of parental power and resulting loss of wrongful death rights found in OCGA § 19-7-1 to also extinguish the right to inherit as an heir from the decedent's estate.[5] To do so would

---

[3] The trial court found that, at best, the only financial support that Cal Blackstone ever gave Corey during his life was $30 per week from September 1984 until he returned to prison in 1985.

[4] See *Taylor v. Taylor*, 280 Ga. 88, 90-91 (623 SE2d 477) (2005) (recognizing that the loss of parental power under OCGA § 19-7-1 is not the equivalent of a termination of parental rights under OCGA § 15-11-94) (Hunstein, J., concurring specially).

[5] We reiterate that the parties assert that the only assets at issue are *potential* proceeds from a wrongful death and/or survival action. A wrongful death action for the death of a child under OCGA §§ 51-4-4 and 19-7-1 is separate and distinct from a survival action for pain and

run contrary to the directive from our Supreme Court that OCGA § 19-7-1 "must be limited in strict accordance with the statutory language used therein, and such language can never be extended beyond its plain and ordinary meaning." (Footnote omitted.) *Tolbert v. Maner*, 271 Ga. 207, 208 (1) (518 SE2d 423) (1999). Thus, while we are sympathetic to Scott Blackstone's position under the facts of this case, we cannot cloak ourselves with the power to make policy decisions that are otherwise reserved for our legislature and regarding which the legislature has remained silent. Accordingly, we must reverse the trial court's grant of summary judgment.

*Judgment reversed. Andrews, P. J., concurs. Barnes, J., concurs fully and specially.*

BARNES, Judge, concurring fully and specially.

I concur fully in all that is said in the majority opinion. I write separately to reiterate and emphasize that this action involves only the estate's claim for the pain and suffering the decedent experienced before his death, and not the wrongful death claim. While the claim for pain and suffering by the decedent before his death belongs to the estate, the wrongful death action does not belong to the estate, and its proceeds are distributed according to statute and as otherwise provided. Therefore, we make no ruling in this case regarding the apportionment of any recovery in the separate wrongful death action.

DECIDED NOVEMBER 21, 2006.

*William J. Sussman*, for appellant.
*Kenneth L. Shigley*, for appellee.

---

suffering of a child under OCGA §§ 51-4-5 (b) and 9-2-41. *Grant v. Ga. Pacific Corp.*, 239 Ga. App. 748, 750-751 (1) (521 SE2d 868) (1999); *Smith v. Mem. Med. Center*, 208 Ga. App. 26, 27-28 (1) (430 SE2d 57) (1993). Standing to bring the survival action vests in the personal representative or administrator of the estate, in this case, Scott Blackstone. OCGA §§ 9-2-41; 51-4-5 (b); 53-2-7; *Walden v. John D. Archbold Mem. Hosp.*, 197 Ga. App. 275, 277 (3) (398 SE2d 271) (1990). We realize that our ruling could ironically result in Cal Blackstone's participation as an heir in the proceeds of the survival action, but not the wrongful death action.